[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 389.]

PANGLE, APPELLEE, *v*. JOYCE ET AL., APPELLANTS.

[Cite as *Pangle v. Joyce*, 1996-Ohio-381.]

*Civil procedure—In ordering new trial on ground that judgment was contrary to law, trial court impermissibly conducts a weighing of the evidence and an assessment of the credibility of witnesses, when.*

(No. 95-1675—Submitted June 5, 1996—Decided August 21, 1996.)

APPEAL from the Court of Appeals for Van Wert County, No. 15-94-5.

————————————

{¶ 1} This cause involves the jury determination of fault in a serious traffic accident. A tractor-trailer driven by Doyle Joyce collided with a Jeep Cherokee driven by Timothy Beyer at the intersection of U.S. Route 127 and State Route 81 in Van Wert County. As a result of the accident, Beyer suffers permanent head injuries. Beyer's mother, Virginia Pangle, filed suit against Joyce and Joyce's employer, Roundys Lake End Sales, as Beyer's guardian, claiming that Joyce's negligence had caused the accident. The defendants denied Joyce's negligence and claimed that the injury had been caused by Beyer's own negligence.

{¶ 2} At trial, the plaintiff and defendants produced differing accounts of the events that immediately preceded the collision. According to the plaintiff, both Beyer and Joyce were traveling in the southbound lane of U.S. Route 127 before arriving at the intersection of Routes 127 and 81. Beyer's passengers were directing him to the location of a stranded vehicle. As Beyer approached Route 81, he signaled a right-hand turn, but was informed by one of his passengers that he should turn left and proceed east on Route 81. Plaintiff's passengers testified that, without ever completely leaving the southbound lane as marked (*i.e.,* passing over the west edge line of the lane), Beyer signaled a left-hand turn and began that turn. Before reaching the eastbound lane of Route 81, Beyer's Jeep was struck by Joyce's truck,

which was now in the northbound lane of Route 127, proceeding in a southerly direction. Plaintiff's passengers opined that Joyce had entered the northbound lane in an attempt to pass Beyer. Plaintiff's theory was that Joyce's *per se* negligence in failing to maintain an assured clear distance (R.C. 4511.21) or driving on the left side of the roadway within one hundred feet of an intersection (R.C. 4511.30) had caused the accident.

{¶ 3} Defendants account for the collision in the manner that follows. Immediately preceding the accident, Joyce was traveling in the southbound lane of Route 127. As he approached the intersection of Routes 127 and 81, he was in radio contact with a truck driven by Gary Yontz. The truck driven by Yontz was directly in front of Joyce and directly behind Beyer as all three vehicles approached the intersection. Yontz told Joyce that the vehicle in front of Yontz—Beyer's Jeep—was making a right-hand turn onto Route 81. Yontz passed Beyer's Jeep on the left well before reaching the intersection. Joyce testified that, upon seeing Beyer's Jeep beginning a right-hand turn, Joyce "hugged the center line" in order to pass Beyer's Jeep as it completed its right turn. According to Joyce, as he neared the intersection, Beyer pulled his Jeep off Route 127 onto Route 81, made a U-turn and reentered the intersection of Routes 127 and 81 traveling in a northeasterly direction. Joyce claims that he then swerved into the northbound lane of Route 127 in an attempt to avoid colliding with Beyer's Jeep, but was unsuccessful.

{¶ 4} After trial, a jury returned a general verdict in favor of the defendants and answered the following interrogatory in the negative: "Was [Joyce] negligent and did that negligence directly and proximately cause any injury to the plaintiff?" The court failed to render judgment on the verdict in accordance with Civ.R. 58(A).

{¶ 5} Plaintiff moved for a new trial on grounds that the supposed judgment was against the manifest weight of the evidence (Civ.R. 59 [A][6]) and contrary to law (Civ.R. 59[A][7]), and on the basis of misconduct of the prevailing party

(Civ.R. 59[A][2]).[1]    The trial court granted plaintiff's motion, finding that the judgment was contrary to law.

{¶ 6} The defendants appealed to the Third District Court of Appeals, which upheld the trial court's order by a two to one vote.  The appellate court also grounded its reasoning solely on Civ.R. 59(A)(7) (judgment contrary to law).

{¶ 7} The cause is now before the court pursuant to the allowance of a discretionary appeal.

_____

*Stephen P. Gehres* and *Martin D. Burchfield*, for appellee.

*Cooper, Walinski & Cramer, Richard Walinski, J. Michael Vassar* and *Paul R. Bonfiglio,* for appellants.

_____

COOK, J.

{¶ 8} In *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph two of the syllabus, this court held that "[t]he fact that a question of law involves a consideration of facts or the evidence, does not turn it into a question of fact or raise a factual issue; nor does that consideration involve the court in weighing the evidence or passing upon its credibility."   With respect to questions of law, *O'Day* requires a court to consider both facts and evidence in reaching its legal determination and enjoins the court from weighing the evidence or passing on issues of credibility. *Id.* at 218-219, 58 O.O.2d at 426, 280 N.E.2d at 898-899.  The central question in this case is whether, in ordering a new trial on the ground that the judgment was contrary to law, the trial court impermissibly

---

1. Plaintiff's argument that the verdict was contrary to law asserted that the jury had failed to follow the trial court's charge on assured clear distance (R.C. 4511.21[A]), as evidenced by its answer to an interrogatory which, according to the plaintiff, demonstrated the jury's finding that Joyce had not been negligent in any manner.  Plaintiff asserted that the evidence at trial conclusively demonstrated that Joyce had been negligent as a matter of law in failing to keep an assured clear distance and that the jury's finding to the contrary demonstrated that its members had failed to follow the trial court's charge.

conducted a weighing of the evidence and an assessment of the credibility of witnesses.[2] Because we conclude that it did, we reverse the judgment of the appellate court and reinstate the original jury verdict.

{¶ 9} Central to the dispositions reached by the trial court and court of appeals is the characterization of defendants' evidence regarding the extent to which Beyer initiated a right-hand turn before eventually turning left. Under the defendants' theory, Beyer left the marked portion of the southbound lane of Route 127, used Route 81 to make a U-turn, and reentered the intersection crossing Joyce's line of travel. The effect of this evidence, if believed by a jury, would be to demonstrate that Beyer departed Joyce's line of travel and reentered it suddenly, thus providing a legal excuse for failing to maintain an assured clear distance (*Erdman v. Mestrovich* [1951], 155 Ohio St. 85, 44 O.O. 97, 97 N.E.2d 674) and for driving on the left side of the roadway within one hundred feet of an approaching intersection (*Satterthwaite v. Morgan* [1943], 141 Ohio St. 447, 25 O.O. 581, 48 N.E.2d 653).

{¶ 10} In concluding that the jury verdict was contrary to law, the trial court grounded its determination on the fact that there was "no *credible* evidence that [Beyer's] vehicle ever completely left the U.S. Route 127 southbound right of way onto the westbound State Route 81 right of way, and then suddenly entered back into U.S. Route 127." (Emphasis added.) In conjunction with its finding, the court concluded that there remained no legal excuse for Joyce's failure to keep an assured clear distance from Beyer's car (R.C. 4511.21) or his act of driving on the left side

---

2. We do not consider whether the trial court's order of a new trial may be supported by Civ.R. 59(A)(6) (weight of the evidence), as both the trial court and court of appeals based their orders on Civ.R. 59(A)(7) (contrary to law). As stated by this court in *O'Day, supra,* 29 Ohio St.2d at 218, 58 O.O.2d at 426, 280 N.E.2d at 898, review of a trial court's ruling on a motion for new trial is limited to that which the court has specified in writing as the cause for which the new trial was allowed pursuant to Civ.R. 59.

of the roadway within one hundred feet of an intersection (R.C. 4511.30[C]) and, therefore, that Joyce was negligent as a matter of law.

{¶ 11} In reviewing the order for a new trial, the appellate court noted the determinative nature of the trial court's finding such a void of evidence, stating that "if [Beyer] did in fact leave the south bound lane of Rt. 127 he would no longer be a discernible object in [Joyce's] path of travel and the assured clear distance ahead rule would no longer apply." The appellate court additionally noted that the same evidence of Beyer's maneuvering could justify Joyce's act of driving in the left lane as an effort to avoid a sudden emergency. Nevertheless, the appellate court upheld the trial court's order, concluding that the trial court neither weighed the evidence nor assessed the witnesses' credibility, but "merely determined the facts of the case in order to apply the law of assured clear distance ahead and driving left of center within 100 feet of an intersection."

{¶ 12} Initially, we note that the analysis employed by the trial court contains a faulty legal premise. The trial court would require Beyer's vehicle to have passed completely over the right white edge line of Route 127 or a continuation of it, thereby entirely leaving the marked southbound highway lane, in order to end Joyce's duty to keep an assured clear distance ahead. See *Kohnle v. Carey* (1946), 80 Ohio App. 23, 27, 35 O.O. 413, 415, 67 N.E.2d 98, 100-101. However, as made clear by this court in *Pallini v. Dankowski* (1969), 17 Ohio St.2d 51, 46 O.O.2d 267, 245 N.E.2d 353, paragraph one of the syllabus, "[t]he word 'ahead,' as used after 'assured clear distance' in the first paragraph of section 4511.21, Revised Code, means to the front of and within the *directional line of travel* of a motorist whose conduct allegedly violates such statute." (Emphasis added.) Therefore, in determining assured clear distance, the question is whether a vehicle is in the path or line of travel of a driver of a following vehicle, not whether the vehicles are in the same lane.

**{¶ 13}** As stated by the *Pallini* court, "[i]f all traffic lanes were the exact width of the vehicles moving therein, no problem [with the line/lane distinction] could result. Since such is not the case, however, a discernible object could be within a motorist's traffic lane of travel, but not within his directional line of travel, and the statute would have no application." *Id.* at 55, 46 O.O.2d at 269, 245 N.E.2d at 356. Accordingly, when a lead vehicle departs from a following motorist's line or path of travel, only to reenter the line or path of travel suddenly and without the fault of the following motorist at a forward distance insufficient to allow the following motorist to avoid collision in the exercise of ordinary care, the following motorist is not negligent *per se* for failing to maintain an assured clear distance. This is true regardless of whether the lead vehicle completely leaves the lane of traffic in which both the lead and following motorist are traveling.

**{¶ 14}** Error in the courts' pronouncement of the law of assured clear distance was not raised as a proposition of law in this case. Additionally, the appellant has not specifically pointed to evidence produced at trial that Beyer departed from Joyce's line of travel as opposed to his travel lane (*i.e.,* that Beyer moved partially onto the berm of the southbound lane and that Joyce simultaneously hugged the center line to a position where Beyer's Jeep was no longer in Joyce's path of travel).[3] Accordingly, we will review this case to determine whether there was evidence before the jury that Beyer's vehicle completely left the southbound lane of Route 127 before attempting a left turn. Such a showing would necessarily demonstrate that Beyer's Jeep departed from Joyce's path of travel, as all accounts of the trial testimony placed Joyce to the east of the western boundary of Route 127 at all times.

---

3. The appellate court overruled the defendants' assignment of error challenging the trial court's pronouncement of the assured clear distance rule, holding that "[t]here is no evidence in this record to show that defendant's truck could safely get past Tim's car without leaving the southbound lane of travel."

**{¶ 15}** Generally, "[w]here conflicting evidence is introduced as to any one of the elements necessary to constitute a violation of statute, a jury question is created." *Tomlinson v. Cincinnati* (1983), 4 Ohio St.3d 66, 69, 4 OBR 155, 158, 446 N.E.2d 454, 456. It is then within the jury's province to assess credibility of the witnesses and determine whose testimony and evidence warrants belief. Upon Civ.R. 59(A)(7) review, the trial court and court of appeals found a void of evidence regarding Beyer's departure from the marked portion of the southbound lane of Route 127 and therefore determined that no jury question regarding the application of R.C. 4511.21 or 4511.30 had been raised. In reaching that conclusion, however, the lower courts impermissibly disregarded key portions of defense witnesses' testimony based on issues of credibility.

**{¶ 16}** In reviewing the trial testimony, the appellate court stated, "A close examination of [Joyce's] testimony reveals that [Joyce] admitted that he would be speculating if he testified that [Beyer's] vehicle had completely left the south bound lane of Route 127. Thus, he offered no evidence about the location of [Beyer's jeep]." At trial, Joyce testified that Beyer's Jeep did, in fact, completely leave Route 127, turning onto Route 81 before reentering the intersection. While Joyce hedged on cross-examination on whether Beyer's Jeep completely crossed an imaginary white line (representing a continuation of the white boundary line on the westernmost edge of the southbound lane of Route 127 through its intersection with Route 81), it was the province of the jurors to assess whether Joyce had been successfully impeached on that issue by cross-examination.

**{¶ 17}** Yontz also testified that the Jeep crossed the white line along the berm of Route 127 and made a complete turn onto Route 81 before reentering the intersection. On review, the appellate court stated that "the [trial] court would be entitled to disregard [Yontz's testimony] based solely on the opportunity of the witness to observe the events about which he testified." While the fact that Yontz observed these events through his rearview mirror at a distance of a quarter mile

may have been a basis for a juror not to credit Yontz's testimony, jurors were equally free to accept it as credible, as the testimony was admitted and was not thereafter stricken.

{¶ 18} In order for evidence on a particular issue to be proper for jury consideration, it must be relevant and based on first-hand knowledge. Evid.R. 402; Evid.R. 602. "Assessment of the accuracy, as opposed to the existence, of a witness's perception is a question of credibility for the trier of fact, and the factfinder bears the responsibility of considering the adequacy of the witness's opportunity for knowing or observing the facts as to which testimony is provided." Weissenberger's Ohio Evidence (1996) 192, Section 602.3; see, also, *id.* at 215, Section 607.8.

{¶ 19} Yontz was permitted to testify regarding his perception of the events. Once he was permitted to testify, the accuracy of his perception was an issue of credibility for the jury to determine.

{¶ 20} We also conclude that the appellate court erred in resting its judgment as a matter of law on an exhibit from which the trier of fact could have drawn various inferences. On cross-examination, Yontz was presented with a transparency depicting the intersection and asked to show on that diagram with a paper rectangle, the location of the Jeep as it proceeded into the U-turn. From this unscaled diagram exhibit, which depicted one corner of Beyer's Jeep remaining in the Route 127 right-of-way as it proceeded into its right-hand turn, the appellate court inferred as a matter of law that Beyer's Jeep never left Route 127. The appellate court thereby appears to have dismissed the fact that the diagram showed only the beginning of a turn and did not demonstrate the Jeep's attitude as it proceeded through its U-turn. The appeals court's legal determination also appears to ignore Yontz's testimony on redirect that the diagram's inaccuracy did not allow him to place Beyer's Jeep on the berm of the road as was the case.

{¶ 21} In support of the plaintiff's account of events, the trial court and court of appeals additionally relied on the importance of the point of impact of the vehicles. The point of impact, as established by a gouge mark in Route 127, was north of the intersection of Routes 127 and 81, or at least north of the center of the intersection. The appellate court concluded that, in order to reach the point of impact after executing the type of turn to which Joyce testified, Beyer's Jeep would have had to circle all the way around and travel in a northerly direction. Plaintiff's expert opined that this would have resulted in a head-on collision. The appellate court characterized the physical evidence as demonstrating that the force of impact was back to front, rather than head-on, and noted that this evidence supported the trial court's determination. There was, however, expert testimony admitted supporting both the plaintiff's and defendants' theories.

{¶ 22} Defendants acknowledged that the point of impact was at a location north of the center of the intersection and produced evidence by way of lay and expert witness testimony supporting the defendants' account of the events as follows. Joyce testified that he swerved into the northbound lane of Route 127 in an attempt to avoid Beyer's Jeep. Joyce further testified that he was moving in a southeasterly direction, across the centerline, when he struck Beyer's Jeep in the northbound lane. Joyce also testified that Beyer "oversteered" his vehicle when executing his exaggerated left turn, which could account for the point of impact being north of the intersection.

{¶ 23} The defendants' expert, Peter Cooley, testified that Beyer was capable of maneuvering his Jeep in a manner consistent with Joyce's account of the events and that damage to the vehicles was consistent with a collision of the vehicles at the angle of impact to which Joyce testified.

{¶ 24} Again, given competing inferences arising from the physical evidence, it was the jury's responsibility, as trier of fact, to determine which account of the events to believe. The trial court permitted both sides to present

expert testimony to assist the jury in analyzing the physical evidence. Once expert testimony was admitted, it was the jury's role to assess the experts' credibility and to assign weight to the experts' testimony and opinions. See *State v. Pargeon* (1991), 64 Ohio App.3d 679, 682, 582 N.E.2d 665, 667.

{¶ 25} In reaching its verdict and its answer to the interrogatory, the jury adopted the defendants' account of the events. The trial court, in ordering a new trial under Civ.R. 59(A)(7), disregarded testimony given by defendants' witnesses in reaching its conclusion that there was a void of evidence from which the defendants could have demonstrated a legal excuse for noncompliance with the assured clear distance rule and the statute prohibiting passing when approaching an intersection. Therefore, the trial court's review of the evidence was not limited to a determination of what evidence was admitted at trial, but necessarily included an evaluation of the witnesses' credibility and assignment of weight to the evidence admitted. By invading the jury's province as factfinder in determining whether the judgment was contrary to law within the meaning of Civ.R. 59(A)(7), the trial court committed legal error. *O'Day, supra.* Accordingly, we reverse the judgment of the appellate court and order the trial court to enter judgment in accordance with the verdict.

*Judgment reversed.*

MOYER, C.J., DESHLER, RESNICK and STRATTON, JJ., concur.

F.E. SWEENEY and PFEIFER, JJ., dissent and would affirm the judgment of the court of appeals.

DANA A. DESHLER, JR., J., of the Tenth Appellate District, sitting for DOUGLAS, J.

———————————

10