DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Constance Calloway appeals from her conviction of one count of complicity to aggravated trafficking in drugs and one count of corrupting another with drugs. We affirm.
The charges against Calloway stem from an incident occurring on December 14, 1992, in which a confidential informant working with the narcotics unit of the Elyria Police Department allegedly purchased two rocks of crack cocaine, with Calloway's aid, from Calloway's twelve year old son. The Lorain County Grand Jury indicted Calloway for knowingly selling or offering to sell a controlled substance, in violation of R.C. 2925.03(A)(1), and for inducing a juvenile to commit a felony drug abuse offense, in violation of R.C. 2925.02(A)(4)(c). Calloway pleaded not guilty to both counts.
In 1993, Calloway was tried to a jury, which found her guilty of corrupting another with drugs and guilty of complicity to aggravated trafficking in drugs. The trial court sentenced her to seven to twenty-five years in prison on the corruption charge and one year on the complicity charge, with sentences to be served consecutively.
Three and a half years after sentencing, Calloway moved this court for permission to file a delayed appeal of her convictions. This court granted that motion. Calloway asserts three assignments of error.
 I.
In her first two assignments of error, Calloway argues that the state's evidence was insufficient to support her convictions and that her convictions were against the manifest weight of the evidence. She maintains that the informant who bought the cocaine was an addict whose testimony was not corroborated by the state's other evidence. Calloway claims specifically that the audio recording of the cocaine purchase that was introduced into evidence at trial was unintelligible and failed to substantiate that she was present during the transaction.
Calloway does not dispute that the informant bought drugs, or that her sons were juveniles who sold drugs. She claims, however, that the state did not prove beyond a reasonable doubt, that she knowingly induced her son to sell drugs to the informant on the date in question.
 A.
It is fundamental that the prosecution must prove every necessary element of a crime charged beyond a reasonable doubt.In re Winship (1970), 397 U.S. 358, 364, 25 L.Ed.2d 368, 375. Crim.R. 29(A) requires a trial court to enter a judgment of acquittal on offenses charged in an indictment if the evidence is insufficient to sustain a conviction. Evidence is insufficient if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could not have found all the essential elements of the offense beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "Sufficiency" is the "`legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" State v. Thompkins (1997), 78 Ohio St.3d 380,386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence presented by the state, if believed, "would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks, supra.
Even though a court of appeals may determine that evidence is legally sufficient to support a conviction, it may nevertheless conclude that a conviction is against the manifest weight of the evidence. State v. Thompkins, 78 Ohio St.3d at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 72 L.Ed.2d, 652,661. To determine whether a conviction is against the manifest weight of the evidence:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340.
 B. 1.
R.C. 2925.03, which governs drug trafficking offenses, provides: "(A) No person shall knowingly * * * (1) [s]ell or offer to sell a controlled substance in an amount less than the minimum bulk amount[.]" R.C. 2923.03(A)(2), which governs complicity, provides: "(A) No person, acting with the kind of culpability required for the commission of an offense, shall * * * (2) [a]id or abet another in committing the offense[.]"
R.C. 2925.02, which governs the crime of corrupting another with drugs, provides that "(A) No person shall knowingly * * * (4) [b]y any means * * * (c) [i]nduce or cause a juvenile who is at least two years his junior to commit a felony drug abuse offense, when the offender knows the age of the juvenile or is reckless in that regard[.]"
 2.
As a preliminary matter, Calloway argues that she was indicted for aggravated trafficking in drugs but was convicted of "attempt" to traffic in drugs, in violation of R.C. 2923.02(A) and R.C. 2925.03(A)(1).
Although the sentencing entry does reference R.C. 2923.02(A), the statute governing criminal attempt, both the sentencing entry and the jury verdict forms state that Calloway was found guilty of complicity, not attempt. Moreover, the trial court instructed the jury that Calloway was charged with "Complicity to Aggravated Trafficking in Drugs" and that in order to find Calloway guilty of complicity, they must find that she "knowingly aided and abetted another in committing the offense of Aggravated Trafficking in Drugs." Accordingly, it is clear from the record that the reference to the wrong statute in the sentencing entry was merely a clerical error and that the only charge before the jury was for complicity to aggravated trafficking in drugs. Calloway was not convicted of attempt.
Calloway also suggests that the jury should not have been permitted to consider a complicity charge since complicity was not charged in the indictment. R.C. 2923.03(F) provides that a person may be charged either under the complicity statute or under the principal offense. State v. Tumbleson (1995), 105 Ohio App.3d 693,697. It is inconsequential that Calloway was actually indicted for the principal offense of aggravated trafficking in drugs, rather than under the complicity statute.
Moreover, we note that Calloway never objected to the complicity charge at trial. Failure to object to a jury instruction constitutes waiver of all but plain error for appeal.State v. Davie (1997), 80 Ohio St.3d 311, 323.
 3.
As to Calloway's claim that there was insufficient evidence that she committed complicity to aggravated trafficking in drugs or that she corrupted her son with drugs, the state presented three witnesses to establish its case.
Brenda Carter Darden testified that she approached the Elyria Police Department and offered to work for them in an undercover capacity to purchase crack cocaine because she was disturbed that Calloway "had her two sons * * * out there selling drugs." Officers wired Darden, gave her $30 to make the purchase from Calloway, and drove her to within two blocks of Calloway's residence in Wilkes Villa on Fuller Street in Elyria.
According to Darden, she knocked on Calloway's door and Calloway, holding a crack pipe, let her in. Darden told Calloway that she wanted to buy two rocks of crack cocaine for $30. Calloway then asked her fourteen year old son "T" if he had any cocaine, and when T said he did not, Calloway went next door and brought her twelve year old son "Z" back to the apartment. Darden then purchased the cocaine from Z, left the Calloway residence, and walked up the street to meet with police officers who had arranged to pick her up.
The state played an audio tape for the jury, which Darden testified was an accurate recording of the drug purchase she had made at Calloway's. The state also introduced two pieces of a substance, which Darden identified as the rocks of cocaine she had purchased at Calloway's residence. A Lorain County criminologist corroborated that the substance was crack cocaine that had been delivered to her for analysis by the Elyria Police Department.
Detective Al Leiby, an Elyria police officer assigned to the narcotics unit, testified that he made the tape recording of Darden's purchase after wiring her and giving her $30 in marked bills. While another officer, Detective Ellis, transported Darden to Wilkes Villa, Detective Leiby and a third officer "set up" a couple hundred feet west of Wilkes Villa. Detective Leiby verified the tape recording as the one he had made. He also explained that, after making the cocaine purchase, Darden gave the cocaine to Detective Ellis who was waiting for her near the Calloway residence.
Calloway and her older son T testified for the defense. T admitted that he and his twelve year old brother Z sold drugs, but T could not recall whether Calloway was home on the day the cocaine was sold to Darden. T stated that Darden asked Z for "two for $30," and T told Z to give Darden the cocaine. T also stated on cross-examination that Calloway knew that he and his brother sold crack cocaine and that she would sometimes steal it from them.
Calloway testified that she did not know whether she was at home or elsewhere on the day Darden purchased the crack cocaine. She did not know whether her voice was on the tape of the drug transaction, but admitted that it "could be." She admitted that she was a crack addict and alcoholic, that she was currently in prison for forgery, and that in 1992 a drug dealer from Detroit who she knew was selling drugs stayed at the Calloway home a few days a month. T testified that it was that drug dealer who got him involved in selling drugs.
Calloway relies on several unreported decisions to support her contention that the evidence against her was insufficient. However, each of those cases is unpersuasive.
In State v. Clark (Jan. 18, 1995), Medina App. No. 2298-M, unreported, this court determined that a tape of a conversation between two drug dealers, one of whom was cooperating with police, provided sufficient evidence to support a conviction for complicity to drug trafficking. Contrary to Calloway's suggestion, Clark merely found the recording to be sufficient evidence of complicity, id. at 7, and does not require an audio tape to corroborate a witness's testimony.
State v. Campbell (May 5, 1983), Cuyahoga App. No. 45565, unreported, involved an informant who had been searched by police officers prior to his making undercover drug purchases. The evidence produced at trial included an audio tape that corroborated the informant's testimony. Campbell merely addressed facts that included a pre-purchase search of an informant and a corroborating tape; it does not require such a fact pattern in order to demonstrate sufficient evidence of trafficking.
State v. Keats (Aug. 20, 1996), Columbiana App. No. 93-C-57, involved the introduction into evidence of a poor quality audio tape made by a police officer in conjunction with an undercover drug purchase. The Seventh District Court of Appeals found that the trial court had not abused its discretion in admitting the tape where the officer who made the tape testified and explained the inaudible portions of the tape to the jury. In the case before us, Calloway has failed to include the tape at issue as part of the record. Thus, we are unable to determine whether or not it should have been admitted. See App.R. 16(A)(3). In any event, Keats does not require a corroborating tape to support a trafficking conviction.
On the record before this court, there was sufficient evidence of both complicity to aggravated drug trafficking and corrupting another with drugs to send both counts to the jury. Even in the absence of the audio tape complained of, the state's witnesses, if believed, established that Calloway knowingly enlisted the aid of her twelve year old son to sell cocaine to Darden. Determinations as to which witnesses are credible are within the province of the jury. Pangle v. Joyce (1996), 76 Ohio St.3d 389,395.
We also find that Calloway's convictions were not against the manifest weight of the evidence. The state's witnesses were unequivocal in their rendition of the circumstances surrounding Darden's purchase of cocaine from Calloway's twelve year old son. As to the defense witnesses, neither Calloway nor her older son testified with certainty that Calloway was not present when Z sold the cocaine to Darden. There was credible evidence from which the jury could have reasonably concluded that Calloway aided and abetted Z in the drug sale to Darden.
Calloway's first and second assignments of error are overruled.
 II.
In her third assignment of error, Calloway maintains that complicity to aggravated trafficking in drugs and corruption of another with drugs are allied offenses of similar import and that, therefore, the trial court could properly convict her of only one.
We have reviewed the record before us and find that Calloway raises this argument for the first time on appeal. Calloway's failure to object to the convictions or to the sentencing on this basis in the trial court constitutes a waiver of this issue on appeal. State v. Smith (1997), 80 Ohio St.3d 89, 118, citingState v. Comen (1990), 50 Ohio St.3d 206, 211. Accordingly, Calloway's third assignment of error is overruled.
The decision of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ WILLIAM R. BAIRD, FOR THE COURT
SLABY, P. J.
DICKINSON, J., CONCUR