This timely appeal arises out of a divorce action between the parties whereby the appellant was awarded certain marital assets, child support and spousal support. It is from these divisions of property and awards that appellant is appealing, and appellee is cross-appealing.
The facts indicate that the parties were married on September 6, 1987. One child was born to the parties on December 16, 1989. After problems developed in their relationship, appellee moved out of the marital residence in November of 1994. On January 18, 1995, appellant filed for divorce. On January 23, 1995, appellee filed his answer and counterclaim. On February 14, 1995, the hearing for temporary orders was held and, on March 14, 1995, the referee ruled on the motions. The referee awarded appellant $2,324.00 per month temporary support based upon $845.00 per month in unemployment compensation, $725.00 per month in spousal support and $923.00 per month for child support. Two motions for modification of the above award were filed by the appellant and heard by the referee. No modification of the child support and spousal support was granted.
On February 28, 1996, the divorce hearing was started. After the divorce trial, but prior to the final judgment being entered, both parties filed a Motion for Reconsideration.
Appellee's motion asked the court to reconsider the amount of spousal support awarded to appellant upon the divorce. Appellant's motion asked the court to include, as marital assets, bonuses appellee earned in 1994 but did not receive until 1995. The trial court filed an entry, on or about May 23, 1996, in which the court found no reason to alter the judgment it had reached but not yet filed. On August 12, 1996, the final divorce judgment entry was filed.
Appellant filed a notice of appeal on September 9, 1996. Appellee filed a cross-appeal on September 11, 1996. Appellee requested a stay and, on December 2, 1996, this court ruled that child and spousal support would continue during the course of the appeal, but a lump sum distribution to the appellant should be held in escrow.
Appellant alleges three assignments of error, to-wit:
 "1. The trial court erred designating December 31, 1994, as the de facto termination of the marriage.
 "2. The trial court erred, abusing its discretion, when it failed to consider bonuses earned by appellant in 1994 though actually not paid to him until 1995 either as a marital asset or as income for the purpose of child support.
 "3. The trial court erred, abusing its discretion, when the court arbitrarily selected the valuation of appellee's business assets as suggested by appellee's expert and disregarded the valuation as found by appellant's expert."
Appellee alleges one cross-assignment of error as follows:
 "The court abused its discretion in awarding to appellant spousal support that exceeds her need and appellee's ability to pay."
In assignment of error number one, appellant alleges that the trial court abused its discretion in the selection of December 31, 1994 as the effective date of the end of the parties' marriage. Appellant is in error.
The trial court is vested with broad discretion when fashioning a division of marital property. Berish v. Berish(1982),69 Ohio St.2d 318, 319. There are no fixed rules for determining a property division. Cherry v. Cherry(1981), 66 Ohio St.2d 348. The trial court must have the discretion to do what is equitable based upon the facts and circumstances of each case. See Briganti v. Briganti(1984), 9 Ohio St.3d 220.
R.C. 3107.171 covers the division of marital property and the determination of the dates of the marriage. R.C. 3107.171 states in relevant part:
 "(A)(2) `During the marriage' means whichever of the following is applicable:
 "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court.
"* * *
 "(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage."
The trial court in its final judgment entry, of August 12, 1996, stated: "That for asset division purposes the effective date of the end of the marriage of plaintiff and defendant is set at December 31, 1994." Thus the trial court has specified the dates it used in determining the meaning of "during the marriage" as required in R.C. 3107.171(G).
As noted by the appellant (see brief of appellant-pg. 12), the parties stipulated in the written judgment entry that the date for valuation of marital assets would be December 31, 1994.
The trial court, having parties who ceased to live together in November of 1994, and who had stipulated that the date for valuation of defendant's marital business interests would be December 31, 1994, and having a divorce action which was filed on January 18, 1995 used the discretion granted to the court in R.C. 3197.171 to find that this marriage was de facto terminated as of December 31, 1994.
 "The decision to use the final hearing date as the valuation date or another alternative date pursuant to R.C. 3105.171(2) (a) and (b) is discretionary and will not be reversed on appeal absent an abuse of discretion." Schneider v. Schneider
(1996), 110 Ohio App.3d 487, 493.
A reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See Blakemore v. Blakemore(1983), 5 Ohio St.3d 217.
 "A reviewing court * * * should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the trial court abused its discretion." Holcomb v. Holcomb(1989), 44 Ohio St.3d 128, 131.
In this case the special situation that required the use of an alternative valuation date, other than the final hearing date, was that the parties had stipulated to the December 31, 1994 date as the valuation date for marital assets and the parties had been living apart for over a month prior to that date. The trial court was justified in using the de facto termination date as the valuation date and did not abuse its discretion. See alsoNeel v. Neel(1996), 113 Ohio App.3d 24.
In assignment of error 2, appellant alleges the trial court abused its discretion when it failed to consider bonuses earned by appellee in 1994 and paid in 1995 as either a marital asset of income for child support purposes. Appellant is in error.
As noted by both appellant and appellee, R.C. 3105.171
authorizes the trial court to determine what constitutes marital property and, upon making such determination, requires the court to divide the marital property equally and equitably between the parties. Focke v. Focke(1992), 85 Ohio App.3d 552. When reviewing the lower court's marital property division, the appellate court must determine whether, under the totality of the circumstances, the trial court abused its discretion. Jamesv. James(1995). 101 Ohio App.3d 668.
 The relevant Ohio statutes covering this issue are R.C. 3105.171
and 3113.215.
R.C. 3105.171 states in relevant part:
 "(A)(3)(a) `Marital property' means, subject to division (a)(3)(b) of this section, all of the following:
 "(I) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
"* * *
 "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
"* * *
 "(G) In any order for the division or disbursement of property or a distribution award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage."
 R.C. 3113.215, covering the amount of child support obligations, states in relevant part:
"(A) As used in this section:
"* * *
 "(2) `Gross income' means, except as excluded in this division, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B) (5)(d) of this section, * * *.
 "(B)(5) When a court computes the amount of child support required to be paid under a child support order or a child support enforcement agency computes the amount of child support to be paid pursuant to an administrative child support order issued pursuant to section 3111.20, 3111.21, or 3111.22 of the Revised Code, all of the following apply:
"* * *
 "(d) When the court or agency calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses:
 "(I) The yearly average of all overtime and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
 "(ii) The total overtime and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."
Appellant alleges that appellee received $41,018.00 as a "percentage of ownership" in 1995 for earnings of 1994, which should have been included as marital property.
The trial court found the termination date of the marriage and the date of the valuation of business properties to be December 31, 1994. Thus, any money received after that date would not be received, "during the marriage."
R.C. 3105.171(A)(3)(a)(I) and (ii) describe "Marital Property" as: "(I) All real and personal property that currently is owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage. (ii) All interest that either or both of the spouses currently has in any real or personal property * * * that was acquired by either or both of the spouses during the marriage."
If the marriage was found to be terminated on December 31, 1994 and the distributions of appellee's business interest monies occurred in 1995, these distributions did not occur "during the marriage."
Appellant also alleges that if the business returns received in 1995 by appellee is not considered as marital property, that it should be considered income or bonuses for the purposes of child support.
R.C. 3113.215 cited by appellant states at (B)(5)(d)(I) and (ii) that gross income shall include the lesser of the following as income from overtime and bonuses, "(I) The yearly average of all overtime and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed; (ii) The total overtime and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."
Both of the above sections discuss bonuses received during the 3 years prior to when the support obligation is computed.
A review of the child support worksheet (See J.E. Ex. A) shows that all bonuses and partnership interest received in those years were totaled and the average then used to compute the child support. Appellee's partnership interest of 1991 of $4,716.00 was included in the 1992 total, the interest earned in 1991 of $33,093.00 partnership interest plus $28,537.00 in bonuses was included in the 1993 figure, and the partnership interest from 1993 of $25,000.00 was included in the 1994 calendar year. The child support calculation was correct as computed by the trial court.
In assignment of error 3, appellant alleges the trial court erred when it selected the valuation of appellee's business assets as testified by appellee's expert rather than the valuations testified to by appellant's expert.
The appellant's expert certified public accountant witness testified that the value of appellee's minority business interest was $159,247.00. The appellee's expert testified that the value of appellee's minority business interest was $52,615.00. Appellant alleges that the trial court's judgment entry on this issue does not provide sufficient detail to enable the reviewing court to determine that the decision was equitable and not an abuse of discretion. Appellant is in error.
The trial court's judgment entry, relative to this issue, states:
 "After considering all of the evidence relative to the value of Defendant's interests in Fireworks Importers Company, Inc., B.J. Alan Fireworks of Indiana, Inc., Niagara Fireworks, Inc., Phantom Fireworks of Cincinnati, Inc., Phantom Fireworks of Pennsylvania, Inc., Phantom Fireworks of South Carolina, Inc., Candy Max, Inc., and Z.B.Y. Partnership (previously stipulated at $10,340.00) the Court finds: That the testimony of Defendant's accounting expert, C.P.A. Thomas Anness, is more credible as Mr. Anness properly considered all the pertinent facts and accepted accounting procedures; that the testimony of Plaintiff's expert C.P.A. Patricia Piteo of Cohen Company, did not consider all the acts and procedures the Court considered applicable; whereby the Court finds that Defendant's interests in all of said business entities has a reasonable value of $52,615.00."
The testimony by appellant's expert witness covered about 150 pages of testimony. Testimony by appellee's expert witness went on for about 50 pages. There was sufficient information from which the trial court judge could have determined that the appellee's expert testimony was more credible.
At one point in appellant's expert witness' testimony, when questioned about tax consequences, she replied, "It's not in the calculation." (Tr. Vol. 1, pg. 91). She went on to state that it's in the management fee. When asked about appellee's minority interest and marketability discount factor, she stated: "I don't think I qualified it." (Tr. Vol. 1, pg. 105). She later went on to admit she factored in her mind the lack of marketability. (Tr. Vol. 1, pg. 105).
Appellee's expert testified that not only had he taken the tax consequences into account, but he had used the minority and lack of marketability discounts in following generally accepted accounting principles. (Tr. Vol. 2, pg. 212). He also offered testimony as to what accounting publications he used and how he arrived at his valuation of appellee's minority business interest values.
Where there is a conflict in the expert testimony offered by a plaintiff and a defendant, the question is one for the determination of the trier of the facts. Once expert testimony is admitted, it is the trier of facts' role to assess the expert's credibility and to assign weight to the expert's testimony and opinions. Pangle v. Joyce(1990), 76 Ohio St.3d 389 andState v. Pargeon(1991), 64 Ohio App.3d 679.
In the case of Flauto v. Flauto(May 9, 1996), Mahoning App. No. 95 C.A. 97, unreported, this court stated:
 "The trial court was presented with extensive evidence from each parties' respective expert witness regarding the valuation of appellee's accounting business. The trial court had before it competent, credible evidence as to possible valuations and was in the best position to determine the credibility of the expert witnesses. The fact that the trial court accepted the valuation set forth by appellee's expert does not automatically render such decision arbitrary or unconscionable. The trial court did not abuse its discretion in failing to adopt the valuation of the accounting business as offered by appellant's expert, which included goodwill as an asset, given the totality of the circumstances herein."
There was no abuse of discretion in this case since there was sufficient credible evidence, considering the totality of the circumstances, from which the trial court could have accepted the valuations given by the appellant's expert witness.
Appellee alleges in his cross-assignment of error that the trial court abused its discretion in awarding appellant spousal support that exceeds her needs and appellee's ability to pay. Appellant was awarded $2,000.00 per month for three years starting on May 1, 1996 and ending on May 1, 1999.
 R.C. 3105.18 relates to spousal support. This statute states in relevant part:
 "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 "(a) The income of the parties, from all sources, including but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
"(b) The relative earning abilities of the parties;
"* * *
 "(G) The standard of living of the parties established during the marriage; * * *"
The trial court, in its Judgment Entry, stated:
 "The Court in setting the Spousal Support of the wife based the same upon the standard of living of the parties during the marriage and on the Husband's income of $104,000.00 per year plus bonuses and the Wife's imputed income of $25,000.00 per year."
These factors, considered by the court, are set forth in R.C.3105.18(1)(a), (b) and (g).
"When a trial court makes an alimony award, it must set forth in the judgment, with sufficient detail, the basis for the award so that a reviewing court can properly review the judgment."Schneider v. Schneider(1989), 61 Ohio App.3d 164, paragraph one of the syllabus. The Schneider court concluded: "The Supreme Court of Ohio now mandates that the trial court include within its judgment the basis for its award of alimony." Id At 168. Herein, the trial court did include the basis for its award.
The court attributed to appellee an annual salary of $104,000.00 (plus bonuses); the court also imputed a salary of $25,000.00 to appellant. Testimony at trial established the comfortable standard of living that both parties had enjoyed during the course of their marriage. The court awarded child support pursuant to the statutory guidelines in the amount of $1,115.36 per month or $13,384.35 per year. The court awarded $2,000.00 per month or $24,000.00 per year in spousal support. These two figures total $37,384.35. Deducting these amounts from the $104,000.00 of appellee leaves $66,615.65 or a little less than twice as much money upon which appellee can subsist. When the figure of $134,449.00 is used (the figure upon which the child support calculation was based), appellee has a total of $97,054.65 to subsist on after paying child support and spousal support. Appellee's argument that the award of spousal support exceeded his ability to pay is without merit.
For all the reasons cited above, appellant/cross-appellee's assignments of error are without merit, as is the assignment of error of appellee/cross-appellant.
The judgment of the trial court is affirmed.
COX, J., concurs.
WAITE, J., concurs.
 APPROVED: _______________________________ JOSEPH E. O'NEILL, Retired Judge of the Seventh Appellate District, Sitting by assignment.