OPINION
At approximately 11:30 P.M. on May 2, 1999, two individuals, Brian Hanselman and Lucas Smith, witnessed a Cadillac passing them on I75 north at approximately 120 miles per hour. Shortly thereafter, when approaching the State Route 35 exit, Hanselman, who was traveling in front of his friend Smith in the left lane, saw the Cadillac flipped on its top. The vehicle was perpendicular to traffic with its nose near the median wall, blocking the left lane and part of the center lane.
Hanselman successfully stopped his vehicle about twelve feet from the Cadillac in the left-hand lane, while Smith swerved around the car, coming to rest in front of the Cadillac, also in the left lane. Once stopped, Hanselman edged his vehicle into the median lane to avoid collision with any oncoming vehicles. The individual who had been driving the Cadillac was Defendant-Appellee Miguel Krishnan.
Very soon thereafter, two more cars approached the scene, Defendant-Appellee Thomas Metcalf in the left lane, and Plaintiff-Appellant Charles Cross in the lane immediately to his right. Metcalf testified he was traveling at approximately fifty-five miles per hour. When Metcalf saw the brake lights and "vehicles getting tangled up" ahead, he applied his brakes so he would be able to stop before reaching the commotion. Cross was ahead of Metcalf approximately a hundred to a hundred and fifty feet, maybe less, when he hit his brakes and lost control, swerving into the left lane perpendicular to the median wall in front of Metcalf. Metcalf was unable to stop in time and collided with the driver's side of Cross' vehicle. Metcalf stated that he would have had ample time to stop before reaching the vehicles ahead if Cross had not entered his lane. Aside from each other, neither Cross nor Metcalf collided with any other vehicles at the scene.
Cross and Krishnan were both transported from the scene by ambulance. Krishnan tested at .12 percent blood alcohol content at the hospital, and suffered from minor injuries. Cross suffered more severe injuries, and does not remember anything about the accident or the entire day prior to the accident.
Subsequently, Cross filed suit against both Metcalf and Krishnan for his damages. After depositions were taken of all parties and the two witnesses, both Krishnan and Metcalf filed motions for summary judgment. On February 16, 2001, the trial court sustained Metcalf's motion, and on February 27, 2001, the court sustained Krishnan's motion. Cross has appealed both of these decisions raising the following assignments of error:
 I. The Trial Court erred by its holding that the Appellee, Thomas Metcalf, did not violate Section 4511.21(A), Ohio Revised Code (Assured Clear Distance)[.]
 II. The Trial Court erred failing to hold that there is a disputed issue of fact as to whether or not the Appellee, Thomas Metcalf, was negligent by violating Section 4511.21(B) (Speeding) and whether Appellee's negligence was a proximate cause of the accident.
 III. The Trial Court erred by its holding that the Appellee, Miguel Krishnan's, negligence which caused Appellee's motor vehicle to overturn on Interstate 75 at night blocking two lanes of traffic was too remote in space and time to be the proximate cause of Appellee's [sic] accident.
 IV. The Trial Court erred by holding the Appellee [sic], Charles Cross, was negligent and that his negligence was in itself an independent cause of the accident.
For ease of discussion, we will combine Cross' assignments of error into those against Appellee Metcalf, and those against Appellee Krishnan. Initially, we must set out our standard for reviewing each of these summary judgment decisions.
An appellate court's review of a summary judgment decision is de novo. Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 10, citing Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. In reviewing a summary judgment decision, the appellate court must apply the standard found in Civ.R. 56, the same as a trial court. According to Civ.R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
The moving party has the burden to establish that there is no genuine issue as to any material fact. Id. This burden can only be met by identifying specific facts found in evidentiary materials listed in Civ.R. 56(C), including "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. It is not sufficient for a movant to simply make a conclusory assertion that the plaintiff has not produced enough evidence to prove his case. In this regard, the Ohio Supreme Court stated:
 A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case. It is the defendant's task to negate, if he can, the claimed basis for the suit.
Id. at 290. Although the movant is not necessarily required to provide affirmative evidence, such as affidavits or other materials produced by the movant when presenting his motion, he does have the responsibility to inform the court of the basis for his motion by pointing to specific facts in the record. Id. at 292. If the evidence is not contained in the record, the motion cannot succeed. Id. at 293. On the other hand, if the movant is able to demonstrate that the non-moving party's case lacks the necessary evidence to support its claims, he has successfully discharged his burden. Id. at 289-90.
It is only after the moving party has discharged his burden that the non-moving party will have a reciprocal burden as outlined in Civ.R. 56(E). This section provides the "adverse party may not rest upon the mere allegations or denials of [the party's] pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." See id. at 293. Civ.R. 56(E) provides if the non-moving party does not respond or outline specific facts to demonstrate a genuine issue of material fact, then summary judgment is proper. Id.
 I
Cross challenges the trial court's failure to find a genuine issue of material fact that Metcalf violated the assured clear distance statute, R.C. 4511.21(A), mainly due to his alleged speeding. R.C. 4511.21(A) states that "* * * no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." It is well established that a person violates this statute only if:
 there is evidence that the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible.
Didier v. Johns (1996), 114 Ohio App.3d 746, 751, citing Blair v. Goff-Kirby Co. (1976), 49 Ohio St.2d 5, 7. Where conflicting evidence exists and reasonable minds could differ as to any one of the elements stated above, a jury question exists as to that element. Id. There is no dispute that Cross' vehicle was ahead of Metcalf in his lane of travel at the time of the collision, or that the vehicle was reasonably discernible. However, there is a dispute as to whether Cross' vehicle had stopped at the time of the collision or was still moving. Based on the facts, if Cross was still moving, he would have been moving in a perpendicular direction to Metcalf, instead of the same direction as required by the statute.
Nevertheless, the issue of whether Cross was still moving at the time of the collision becomes moot when we consider the remaining element, whether Cross' vehicle suddenly appeared in Metcalf's path. The assured clear distance statute is not violated when "such assured clear distance ahead is, without [the driver's fault], suddenly cut down or lessened by the entrance within such clear distance and into his path or lane of travel an obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith." Id. at 752, citing Erdman v. Mestrovich (1951), 155 Ohio St. 85, paragraph 2 of the syllabus. The evidence is uncontroverted that Cross was traveling in the center lane ahead of Metcalf in the left lane when Cross hit his brakes and lost control, causing his vehicle to turn ninety degrees and slide into Metcalf's path. Because all evidence indicates that Cross suddenly appeared in Metcalf's path, there is no dispute that this element of the assured clear distance statute was not satisfied. Accordingly, Metcalf has met his burden under Civ.R. 56.
The burden then shifts to Cross to point out evidence in the record demonstrating that there is a genuine issue of material fact regarding a necessary element. Despite these undisputed facts, Cross still argues that Metcalf violated the assured clear distance statute because some evidence exists that Metcalf was speeding when he hit his brakes. The evidence referred to by Cross is an affidavit from an accident reconstructionist who opined that Metcalf was traveling at sixty-six to seventy-two miles per hour at the time he attempted to stop his vehicle. This opinion is based on the measurement of skid marks as reported by the investigating police officer, and measurement of the impact to Cross' vehicle. Metcalf represented the only other testimony regarding the speed of his vehicle, which he reported to be fifty-five, possibly as high as sixty-five, miles per hour prior to hitting his brakes. Cross claims this conflicting evidence presents a question of fact for the jury to resolve. We disagree.
Cross relies solely on the affidavit of the accident reconstructionist who found that Metcalf was exceeding the speed limit between eleven and seventeen miles per hour. However, this reconstructionist did not contend that Metcalf's speed contributed in any way to his inability to avoid the collision with Cross' vehicle when it suddenly appeared in his path. As a result, Cross has not raised a genuine issue of material fact as to whether Cross' vehicle suddenly appeared in Metcalf's path, rendering him unable, with the exercise of due care, to stop in time to avoid the collision.
Further, Cross cites two cases to support his position that speeding is relevant to whether Metcalf could have stopped his vehicle with the exercise of due care. See Piper v. McMillan (1999), 134 Ohio App.3d 180; Pangle v. Joyce (1996), 76 Ohio St.3d 389, 392. The collision in McMillan occurred when car number one had stopped partially blocking a lane of travel, car number two collided with its rear, and car number three then collided with the rear of car number two. McMillan, supra, at 184. The McMillan court found that no cars suddenly appeared in anyone's path in McMillan, so that element did not prevent a finding that the assured clear distance statute was violated. Id. at 190. Because this element was satisfied by the facts in McMillan, the case is not germane to our discussion. Moreover, the McMillan court never addressed the speed of the vehicles.
In Pangle, there was a question of fact as to whether the plaintiff vehicle suddenly appeared in the path of the defendant vehicle, thereby raising a question whether the assured clear distance statute was violated. Pangle, supra. However, the Pangle court also did not mention the speed of either vehicle, or whether speed had any relevance when a vehicle suddenly appears in the path of another.
Accordingly, neither of these cases support Cross' allegation that the disputed issue of speed has any relevance when there is no dispute that Cross' vehicle suddenly appeared in Metcalf's path.
Because the evidence that Cross suddenly appeared in Metcalf's path is undisputed, no genuine issue of material fact exists to show that Metcalf violated the assured clear distance statute. Accordingly, the summary judgment granted in favor of Metcalf was proper.
 II
In his case against Krishnan, Cross alleges that Krishnan's negligence in causing his own accident and/or failing to warn others of the hazard created by his overturned vehicle, was the proximate cause of Cross' injuries. Krishnan refutes this allegation, claiming that his accident was too remote in time and space, and Cross' own intervening negligence negates his liability for Cross' injuries. Cross and Krishnan have each cited several cases to support their respective positions. Because there is sufficient evidence to indicate Krishnan acted negligently in causing his own accident, we will assume that as true for purposes of our discussion.
We must begin by exploring the meaning of proximate cause. "[W]here an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established * * *." Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 287. An injury can result from more than one proximate cause. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,587. In order to relieve a negligent actor from liability, there must be an intervening cause of the resulting injury.
The doctrine of intervening cause may relieve an original negligent actor from liability if the intervening cause breaks the chain of causation. "A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency that could or should have eliminated the hazard." Doe v. Dayton City School Dist. Bd. of Edn. (1999), 137 Ohio App.3d 166,171, citing Hurt v. Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 323. "However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." Berdyck v. Shinde (1993),66 Ohio St.3d 573, 585. Put another way, "[t]he mere fact that the intervention of a responsible human being can be traced between the defendant's alleged wrongful act and the injury complained of does not absolve him upon the ground of lack of proximate cause if the injury ensued in the ordinary course of events, and if the intervening cause was set in motion by the defendant." (Emphasis added.) Queen City Terminals, Inc. v. Gen. Am. Transp. Corp. (1995), 73 Ohio St.3d 609, 619. In terms of this case, if Krishnan's original negligent act combined with another act to cause Cross' injury, then Krishnan would not be relieved from liability unless it could be shown that the second act would have produced the injury independently of Krishnan's negligence.
The facts of the present case are similar to our case of Didier v. Johns (1996), 114 Ohio App.3d 746, but there is one very important distinction. The facts in Didier revealed Johns' vehicle was traveling west on the same road where Didier was following a bus proceeding east. Id. at 748. When Johns fell asleep at the wheel, crossing the center line, the bus came to an abrupt stop to avoid colliding with Johns. Didier was unable to stop his motorcycle in time and slid under the bus, sustaining severe injuries. As a result of this accident, Didier sued Johns for his injuries. Id. at 748-49.
Initially, the court found Didier was negligent as a matter of law for his own injuries for violating the assured clear distance statute, as he failed to maintain an assured clear distance behind the bus. Id. at 751. Moreover, the court stated:
 "[t]he law is clear that Didier was obliged to maintain an assured clear distance ahead of him, and the reasons necessitating the slowing or the stopping of the vehicle ahead of him are immaterial." Id. at 752, citing Cox v. Polster (1963), 174 Ohio St. 224. Because violation of all elements of the assured clear distance statute renders the violator negligent as a matter of law, the reasons for violating the statute are immaterial as a matter of law. Herein lies the distinction between Didier and the present case.
The evidence is undisputed that Cross lost control of his vehicle while traveling in the center lane, and swerved at a ninety degree angle into the left lane. Undoubtedly, Cross had a duty of care not to uncontrollably swerve into the path of another vehicle. However, this negligent act is not negligence as a matter of law, as with violation of the assured clear distance statute. Hence, the reasons Cross hit his brakes and swerved into Metcalf's path are not immaterial as a matter of law. While we find it compelling that all other individuals approaching Krishnan's overturned vehicle were able to stop, except for Cross, we cannot say as a matter of law that Cross' negligence was an intervening cause entirely unrelated to the hazard created by Krishnan's negligence. So, although Cross' negligence may also be a proximate cause of his own injuries, there remains a genuine issue of material fact whether Krishnan's negligence caused him to hit his brakes and lose control. Stated in the language of negligence law, Cross' negligence may have been an intervening cause of his injuries, but Cross' conduct could have been the result of Krishnan's negligence, and therefore, the chain of causation may not have been broken.
Moreover, because we have evidence that both Krishnan and Cross' negligence may have contributed to Cross' injuries, we have a question of comparative negligence, which is solely a question for the jury to decide. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 681. Based on the foregoing discussion, Cross' assignments of error challenging summary judgment in favor of Krishnan are sustained.
Accordingly, the trial court's decision granting summary judgment in favor of Metcalf is affirmed, and the decision granting summary judgment in favor of Krishnan is reversed and remanded for trial.
WOLFF P.J., and GRADY, J., concur.