OPINION
{¶ 1} Plaintiff-appellant, Steve Steffy, individually and as administrator of the Estate of Eric J. Hurst ("Hurst"), deceased, appeals from a judgment of the Franklin County Court of Common Pleas, pursuant to a jury verdict, for defendants-appellees, Carl J. Blevins (individually, "defendant") and Cintas Corporation ("Cintas"). Because the trial court did not err in allowing defendants' expert to testify to the sudden emergency defense, and because the jury's verdict is supported by the manifest weight of the evidence, we affirm.
 {¶ 2} On September 20, 2000, at approximately one o'clock in the afternoon, defendant, an employee of "Cintas," was driving northbound on State Route 104 in one of the company's 26-foot box trucks. A co-worker, Todd Carsey, accompanied defendant. Southbound in the lane opposite defendant and Carsey was a black Honda Civic that Hurst was driving. The two vehicles collided head on, resulting in the death of Hurst. Liability for the accident is disputed.
 {¶ 3} Plaintiff asserts defendant negligently crossed the centerline and, as a result, is responsible for the accident and Hurst's death. In support, plaintiff relies on the testimony of his expert witness, Laurence G. DuBois, who opined that Hurst's Honda was completely in its own lane of travel at the time of impact. According to DuBois, the Cintas truck, by contrast, was mostly left of center during the impact: five feet of the eight-foot-wide truck was in Hurst's lane when the two vehicles collided. Although he did not exclude the possibility, DuBois testified no physical evidence indicated Hurst's Honda ever left its own lane of travel prior to the collision. In response to a witness who stated she saw a black object move across the roadway from the southbound lane to the northbound lane, DuBois opined that object was the black skin from Hurst's driver's side door, which was torn from the Honda, traveled across the roadway, and rested in the ditch on the right side of the road.
 {¶ 4} Plaintiff also relies on testimony that, just before the accident, defendant admitted to leaning forward in his seat and to talking with Carsey. When defendant brought his focus back to driving, the Honda he had once seen several hundred feet down the road was directly in front of the Cintas truck. Because everything happened so fast, defendant had only about one second to react after seeing the car. Defendant denied braking or steering either left or right to try to avoid the accident; rather, he claimed he "froze up." (Tr. I, 44, 49-50.)
 {¶ 5} Plaintiff couples defendant's testimony with that of Carsey, who testified he "felt the truck drift towards the center or to the left" immediately before the collision. (Tr. I, 68.) At that time, Carsey became concerned, looked to see if everything was okay, noticed a headlight directly in front of them, and the impact followed. Dorothy Hutchison, the driver of the SUV traveling directly behind the Cintas truck, corroborated the testimony of defendant and Carsey. Hutchison testified that the Cintas truck gradually moved left of center before the collision, and like defendant and Carsey, she never saw Hurst's Honda go left of center prior to the accident. These facts, plaintiff suggests, render defendant negligent.
 {¶ 6} Defendants, on the other hand, contend Hurst's Honda first went left of center, creating a sudden emergency and defendant's need to swerve to escape harm. In support, defendants focus on the testimony of Stephanie Mitchell, the passenger in Hutchison's SUV. According to Mitchell, the first thing that caught her eye about the accident was "something black" crossing her field of vision from left to right ahead of the Cintas truck. (Tr. II, 93-94, 96, 112-113.) Within "milliseconds" of the black flash, the Cintas truck suddenly swerved into the opposite lane, traveling from right to left (Tr. II, 94-95, 108); Mitchell then saw accident debris flying in the air. She said the events all happened within the snap of a finger. Mitchell could not identify immediately the "black thing" that crossed her field of vision; when she and Hutchison reached the scene of the accident, Mitchell concluded it was Hurst's car.
 {¶ 7} Sergeant Billy Huffman, deputy sheriff in charge of investigating traffic accidents for Pickaway County, likewise concluded Hurst's black Honda first went left of center, and the Cintas truck later moved left of center as part of an evasive action designed to avoid a collision. Even when told to assume that defendant gave testimony under oath that he took no evasive action, Sergeant Huffman maintained his conclusion. (Tr. III, 51-52.) Sergeant Huffman based his conclusion on three pieces of evidence: (1) the testimony of Stephanie Mitchell, (2) a scuff mark made on the road by what he believed was the left rear tire of Hurst's car, and (3) gouge marks that were visible in the pavement at a southwest angle, indicating the Honda was traveling back into its lane at the time of the accident.
 {¶ 8} Defendants, too, had an expert witness, Scott Noll, who concurred that Hurst's Honda was left of center and therefore created an emergency situation for defendant. According to Noll, "[t]he accident happened as the truck, the Cintas truck was travelling in the northbound lane, at which time the Hurst vehicle, the Honda in this case, moved from the southbound lane into the northbound lane posing an immediate threat to the driver of the truck. And when that happened, he, as a response, steered his truck into the southbound lane. And sure enough, the Honda as well attempted to get back into that lane." (Tr. II, 140.)
 {¶ 9} Noll premised his opinion on the physical evidence that consisted of: (1) the angle of the Honda at impact, and (2) the orientation of the gouge marks in the roadway. Based on the contact damage, Noll opined that Hurst's Honda was at an angle of approximately 12-degrees at the time of impact. According to Noll, "[f]or a vehicle to get at an angle of 12-degrees in a roadway [the driver must] move significantly laterally in the roadway. You can't do that within your own lane of travel at highway speeds * * *. You would have to have come from the opposite lane of travel in order to achieve such an angle." (Tr. II, 148-149.) Moreover, Noll discovered the gouge marks in the roadway to be angled off to the right side at about 12-degrees. Noll explained the evidence corroborated the direction of Hurst's Honda at the time of the collision:
What happened in this accident as the two vehicles collided, the truck initially overrode portions of the Honda. And when that happened, it drove the Honda or components thereof into the pavement leaving this set of gouge marks and scrape marks. When those marks were made, the Honda had not significanctally [sic] rotated; that is, you know, changed its orientation in the roadway when those marks were made, meaning that indicates the pre-impact direction of the Honda.
(Tr. II, 150.)
 {¶ 10} In addition to the physical evidence, Noll gave great weight to Mitchell's testimony, but not to that of defendant. As Noll explained, he did significant work in order to determine whether Mitchell could see what she claimed she saw. After traveling to the accident scene and setting up nearly identical vehicles in the locations of the original vehicles, Noll shot a video from Mitchell's perspective. The video demonstrated that Mitchell could, in fact, see what she testified to seeing. Moreover, the physical evidence contradicted defendant's testimony. When asked to reconcile defendant's testimony with his opinions, Noll stated that, in his experience, drivers who have been in accidents do not often remember many of the details from their collisions.
 {¶ 11} According to Noll, the witness' testimony, coupled with the physical evidence, was enough for him to conclude that Hurst drove his Honda into defendant's lane, causing defendant to have a knee-jerk reaction and steer his vehicle into the opposite lane of travel. He testified that it was "absolutely not" possible for the Cintas truck to have "just drifted left of center" and hit Hurst. Indeed, Noll went so far as to opine that he did not believe the accident would have occurred at all if Hurst had kept his vehicle in the southbound lane at all times.
 {¶ 12} On the evidence presented, the jury returned a verdict in favor of defendants on February 7, 2002, responding "No" to the jury interrogatory that inquired, "Was the Defendant, Carl J. Blevins, negligent, and was his negligence, if any, a proximate cause of the accident?" (Jury Interrogatories, 1.) The trial court entered judgment accordingly.
 {¶ 13} On February 28, 2002, plaintiff filed a timely motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied both motions in its decision and entry dated October 21, 2002. Plaintiff timely appeals, assigning five errors:
I. The trial court erred by allowing defendant's expert witness (A Mechanical Engineer) to testify as to a [sic] speculative Hypotheses as to perception and reaction of defendant truck driver which were directly contrary to the testimony of the driver as to his perceptions and lack of reaction and which did not absolve the driver's negligence of operating the truck left of center.
II. The trial court erred in restricting plaintiff's attempt to offer rebuttal evidence in response to testimony of defendants' expert witness.
III. The trial court erred in submitting the issue of "sudden emergency" to the jury.
IV. The verdict finding that defendant was not negligent was against the manifest weight of the evidence.
V. The trial court erred in refusing to grant plaintiff's motion for new trial.
 {¶ 14} Plaintiff's first assignment of error asserts defendants' expert should not have been permitted to opine that defendant traveled left of center as a "knee-jerk reaction" to Hurst's crossing the center line. In support, plaintiff claims Noll's opinion was beyond the scope of his expertise, his opinion was not based upon facts or data perceived by Noll or admitted into evidence at trial, and Noll's opinion was legally insufficient to constitute a defense.
 {¶ 15} "It is well established that rulings concerning the admissibility and scope of expert opinion testimony are within the broad discretion of the trial court and will not be reversed on appeal absent a clear showing of an abuse of discretion resulting in material adverse prejudice." Pacific Great Lakes Corp. v. Bessemer Lake Erie R.R.
(1998), 130 Ohio App.3d 477, 501. To qualify as an abuse of discretion, legal error is not enough; the ruling must be unreasonable, arbitrary, or unconscionable. Id. at 502; Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256; Colboch v. Uniroyal Tire Co., Inc. (1996),108 Ohio App.3d 448, 461.
 {¶ 16} Plaintiff first asserts Noll's "hypothetical proposition," proposing that defendant was in a position of sudden emergency at the time of the impact, was beyond the scope of Noll's training and expertise. Specifically, plaintiff argues that since "defendant testified that he was in his own lane of travel, observed nothing to make him aware of any peril and had no time to take any type of defensive reaction," Noll, who "is not a physiologist, psychologist or other individual trained in human reactions," should not be able to testify about the nature of defendant's behavior. (Appellant's brief, 9-10.) On this record, plaintiff's contention is not persuasive.
 {¶ 17} Although in conflict with defendant's testimony, Noll's conclusion that defendant was under an "immediate threat" when Hurst's Honda crossed the centerline was supported not only by the testimony of Stephanie Mitchell and Sergeant Huffman, but also by the physical evidence. Noll did not have to go beyond his area of training and expertise in mechanical engineering and accident reconstruction to formulate his scientific opinions. Rather, to reach his conclusions, Noll examined, among other things, the angle of the Honda at impact, the orientation of the gouge marks in the roadway, and the witness' testimony.
 {¶ 18} Plaintiff next claims that because Noll's opinion regarding sudden emergency was "directly contrary to the evidence admitted in trial," his opinion should be inadmissible as failing to meet the requirements of Evid.R. 703. Evid.R. 703 states, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." For facts or data to be perceived by the expert, the facts must either be within the personal knowledge of the expert or based upon facts shown by other evidence. Burens v. Indus. Comm. of Ohio (1955), 162 Ohio St. 549, paragraph one of the syllabus; Kraner v. Coastal Tank Lines, Inc. (1971),26 Ohio St.2d 59, 60; State v. Minor (1988), 47 Ohio App.3d 22, 24. Because Noll based his opinions on evidence personally observed at the accident scene or other facts admitted into evidence, they were properly admissible under Evid.R. 703. Furthermore, weaknesses in the factual bases of an expert's testimony go to the weight and credibility of the expert's testimony, not to its admissibility. Pacific Great Lakes Corp.,
at 503; Johnson v. Knipp (1973), 36 Ohio App.2d 218, 220 ("The absence of certain facts, or the failure of proof of others, goes to the weight and credibility of the testimony, and not to its admissibility. The burden falls on the opposing party to discredit or minimize the expert's testimony through cross-examination").
 {¶ 19} Lastly, plaintiff contends that because Noll's expert opinion "cannot as a matter of law constitute a basis for a finding of emergency or lack of negligence," it should not have been admitted. Evid.R. 702 provides:
A witness may testify as an expert if all of the following apply:
(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
(C) The witness' testimony is based on reliable scientific, technical, or other specialized information * * *.
 {¶ 20} Noll's testimony meets the requirements of Evid.R. 702. First, Noll's testimony assisted the jurors in understanding the meaning of the physical evidence. For example, he spoke to the 12-degree angle of impact and 12-degree orientation of the gouge marks, and he explained to the jurors, based on his knowledge and experience, the significance of those angles. Noll possessed some knowledge of accident reconstruction superior to that the jury panel possessed.
 {¶ 21} Moreover, Noll had the requisite "knowledge, skill, experience, training, or education" needed to render expert opinions about accident reconstruction. The record states that Noll had a Master's degree in engineering mechanics from The Ohio State University and a Bachelor's degree in mechanical engineering from Ohio Northern University. In addition, Noll trained under nationally recognized accident investigation experts for six months and "attended seminars and other training activities * * * specifically with Northwestern Traffic Institute with Northwestern University in accident reconstruction, training which lasts a week, and also the working conferences with S.A.E. [Society of Automotive Engineers]." (Tr. II, 136-137.) Lastly, based on this record, Noll's conclusions were based on reliable principles of physics, mathematics, and authoritative texts in the area of accident reconstruction, and, as a result, the trial court did not err in admitting his testimony pursuant to Evid.R. 702. Plaintiff's first assignment of error is overruled.
 {¶ 22} Plaintiff's second assignment of error asserts the trial court erred by limiting the rebuttal testimony of plaintiff's expert witness, DuBois. Specifically, relying on Phung v. Waste Mgt., Inc.
(1994), 71 Ohio St.3d 408, plaintiff contends that because the trial court only allowed rebuttal "relating to the printed articles and did not permit testimony as to clarification of the drawings or the significance of the scuff marks and contact or collateral damages," prejudicial error occurred. (Appellant's brief, 13.)
 {¶ 23} "Admission of rebuttal testimony is a matter within the sound discretion of the trial court and its judgment will not be reversed absent a clear showing of an abuse of that discretion with attendant material prejudice to the defendant." State v. Berenyi (Sept. 19, 2000), Allen App. No. 1-99-87, quoting State v. Hymore (1967), 9 Ohio St.2d 122,128; see, also, O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163; Lawsonv. Bd. of Edn. of the Columbus City School Dist. (Aug. 1, 1996), Franklin App. No. 95APE11-1505. "Thus, a trial court's decision regarding the admission of rebuttal testimony will not be reversed unless the trial court's decision was unreasonable, arbitrary or unconscionable."Berenyi, quoting State v. Finnerty (1989), 45 Ohio St.3d 104, 108. According to Phung, "[a] party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief." Id. at 410, citing Katz v. Enzer (1985),29 Ohio App.3d 118.
 {¶ 24} Phung does not support plaintiff's contentions, because the record reflects that the matters plaintiff wished to inquire about during rebuttal were first addressed during his own case-in-chief. DuBois gave his expert opinions, including his opinion that no physical evidence suggested Hurst's vehicle ever left its own southbound lane. During cross-examination, DuBois was confronted with what were to be Noll's conflicting expert opinions, and DuBois was given the opportunity to comment. DuBois even admitted that if Noll was correct and Hurst's vehicle was in fact at a 12-degree angle at the point of impact with the Cintas truck, the Honda would have had to be in the northbound lane just prior to impact. Plaintiff chose not to redirect DuBois on these matters, even though redirect provided the opportunity for plaintiff to ask his rebuttal questions.
 {¶ 25} Plaintiff further asserts he should not have been denied rebuttal because Noll's conflicting expert opinion, incorporated into question posed to DuBois on cross-examination, mischaracterized various portions of DuBois' expert testimony. If plaintiff wished to refute what he thought was a mischaracterization of DuBois' testimony, he could have done so in redirect examination of DuBois and in cross-examination of Noll. Because plaintiff had the opportunity to redirect DuBois and cross-examine Noll, the record fails to demonstrate the trial court abused its discretion in refusing plaintiff's request for rebuttal testimony following the close of defendants' case. Plaintiff's second assignment of error is overruled.
 {¶ 26} Plaintiff's third assignment of error asserts the trial court erred in instructing the jury on the legal excuse of sudden emergency, because the record has insufficient evidence to support such an instruction. "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591, quoting Feterle v. Huettner (1971), 28 Ohio St.2d 54, syllabus.
 {¶ 27} In Ohio, one who operates a motor vehicle has a statutory duty to drive on the right side of the roadway. Peters v. B. F.Transfer Co. (1966), 7 Ohio St.2d 143, 149. See R.C. 4511.25. Here, defendant traveled left of center and failed to yield the right of way to Hurst. Absent a legal excuse, defendant would be deemed negligent per se for driving left of center. B. F. Transfer Co., at paragraphs one and two of the syllabus. Defendant relies on the sudden emergency doctrine as his legal excuse, and it provides that "one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence." Mapes v. Opper (1983),9 Ohio App.3d 140, 141, citing Scott v. Marshall (1951), 90 Ohio App. 347,365. In order to invoke the sudden emergency doctrine at trial, defendants were required to show: (1) compliance with a specific safety statute was rendered impossible, (2) by a sudden emergency, (3) that arose without the fault of the party asserting the excuse, (4) because of circumstances over which the party asserting the excuse had no control, and (5) the party asserting the excuse exercised such care as a reasonably prudent person would have under the circumstances. Bush v.Harvey Transfer Co. (1946), 146 Ohio St. 657, 664-665. The party asserting the legal excuse bears the burden of proving all elements by a preponderance of the evidence. Id.
 {¶ 28} "When a defendant offers evidence of facts from which it may be inferred that his violation of such legal requirement was due to the existence of a sudden emergency arising without his fault, the questions of his liability in the premises, and of the proximate cause of injury resulting from such violation, are for the jury." Nomic v. Pettry
(1972), 32 Ohio App.2d 152, 155, quoting Satterthwaite v. Morgan (1943),141 Ohio St. 447, paragraph three of the syllabus; Radecki v. Lammers
(1968), 15 Ohio St.2d 101, 104 (holding "[i]t was within the province of the jury to determine whether the facts and circumstances confronting the plaintiff and the defendant created a `sudden emergency'"); Francis v.Bieber (1967), 10 Ohio St.2d 65, 68 (determining that the trial court's decision to submit the issue of sudden emergency to the jury followed the long-established law of Ohio and was not error);Stutz v. LaForest
(1992), 83 Ohio App.3d 883, 886 (concluding the trial court erred because it directed a verdict where reasonable minds could come to more than one conclusion on the evidence with respect to who was negligent and whether a sudden emergency existed). Here, sufficient evidence existed on each element of sudden emergency to justify the trial court's submitting the issue to the jury.
 {¶ 29} The first element of sudden emergency is impossibility; it must have been impossible for the party asserting the excuse to comply with the specific safety statute at issue. The reasoning behind this element is straightforward: "The courts will not attempt to enforce the provisions of a statute which are impossible of fulfillment, for the courts will presume that the Legislature did not intend to do an absurd or impossible thing." Francis, at 68. Plaintiff submits that the element of impossibility is not met, because if defendant had kept the Cintas truck in its own lane at all times and complied with R.C. 4511.25, the collision would have never occurred. Contrary to plaintiff's contention, evidence in the record indicates that during the incident, defendant knew a sudden impasse appeared in his lane, Hurst's vehicle, which forced him to travel left of center to avoid a collision. In addition, because a ditch existed on the right side of the road, steering left of center was safer than steering to the right. Cumulatively, this evidence, if a jury believed it, would be adequate to establish the element of impossibility.
 {¶ 30} The second element of sudden emergency requires an actual emergency. In order to qualify as an "emergency," the situation must be "transitory in character and comprehends a sudden and unexpected occurrence or condition which demands immediate action without time for reflection or deliberation." Miller v. McAllister (1959), 169 Ohio St. 487,497-498. The sudden emergency doctrine does not apply in a situation where the element of sudden peril or imminent danger is lacking. Badurinav. Bolen (1961), 114 Ohio App. 478, paragraph one of the syllabus.
 {¶ 31} Ohio case law requires not only that an emergency exist, but also that the party asserting the excuse of sudden emergency be aware that he or she is in a position of peril at the time the emergency transpires. White v. Kinkus (1963), 95 Ohio Law Abs. 161, 202 N.E.2d 435 ("On the facts of this case it becomes apparent that the defendant never having seen the plaintiff was not required to make any decision based upon a sudden emergency by reason of plaintiff's movement from behind the parked car and hence sudden emergency as to that part of the happenings should not have been given because it would tend to raise an issue that was not present").
 {¶ 32} Here, plaintiff mistakenly interprets this corollary to require that defendant be able to recall and testify that he reacted to the peril. The test, however, is objective. The fact that the person who faced the peril recalls the incident and can testify accurately to how he or she felt, what happened, and why the situation occurred, is only one factor to be considered. Other factors include the testimony of witnesses, both expert and lay, and any physical evidence. The party asserting the excuse of sudden emergency need only introduce sufficient evidence from which reasonable minds might reach the conclusion sought by the instruction. See Murphy, at 591; see, also, Reschk v. Merola Ent.,Inc. (Sept. 3, 1992), Cuyahoga App. No. 60957 (noting that although the party asserting the excuse of sudden emergency was deceased and therefore could not testify, the trial court properly determined the issue for the jury because other sufficient evidence gave rise to a genuine issue of material fact).
 {¶ 33} We do not suggest a party asserting the excuse of sudden emergency is exempt from demonstrating awareness of his or her position of peril when no other evidence in the record suggests a sudden emergency. A party, however, does not have to be able to recall and testify about specifics of the reaction where, as here, adequate evidence demonstrates that defendant knew he was in imminent peril before the collision occurred:
Q. Okay. Now, from the time you first saw it approaching, the car you collided with, did you ever see it drive left of center down the road several hundred feet into your lane? Did you ever see it move into your lane?
A. I didn't see it moving into my lane, no, sir.
* * *
Q. I want you to describe for the jury when the next time it was that you noticed the Honda after you said you didn't think there was any danger at that point.
A. The first time I noticed it is when I saw it in my lane, that is when I knew there was danger.
Q. How much time did you have to react after you saw the car, after you did see it in your lane?
A. Not very long at all. A second or two.
(Tr. I, 43-44.)
 {¶ 34} In addition to defendant's testimony, other witness' testimony and physical evidence reflected that defendant reacted to the emergency by hitting his brakes and veering left of center. Specifically, the testimony of Mitchell, Sergeant Huffman, and Noll, as well as the physical evidence regarding the angle of impact of the vehicles and the angle of orientation of the gauge marks in the roadway all support defendant's testimony and application of the doctrine of sudden emergency in this case.
 {¶ 35} Sudden emergency's third element requires the emergency situation occur without the fault of the party asserting the defense. Here, again, sufficient evidence indicates that Hurst's Honda went left of center first, thus inducing defendant to take evasive action by crossing the centerline.
 {¶ 36} The fourth element of sudden emergency requires that the emergency situation arise because of circumstances over which the party asserting the excuse had no control. Here, defendant had no control over Hurst's car which, according to some of the evidence, traveled left of center and created the emergency.
 {¶ 37} The final element of sudden emergency requires the party asserting sudden emergency to exercise care commensurate with what a reasonable person would have employed if put under same or similar perilous circumstances. Scott, Admr., at 365-366; Peters v. Weaver
(1954), 97 Ohio App. 31, 33-34. The standard of care is not overly rigorous, because the type of good judgment that might be required when the opportunity exists for deliberation and choice of action is not demanded of a party when peril or danger is present. Pennsylvania R.R.Co. v. Snyder (1896), 55 Ohio St. 342, paragraph three of the syllabus;Weaver, at paragraph two of the syllabus. The fact that a party fails to select the most judicious choice when the hazard presents itself, or would have escaped injury if he had chosen differently, is of no consequence. Pennsylvania R.R. Co., at paragraph three of the syllabus. The record here contains evidence that defendant acted reasonably. Noll testified:
Q. Why would [Defendant] steer to the left if he saw a Honda coming at him rather than the right?
A. There is a ditch off to the right-hand side that could very well roll his truck over.
Q. Do you think, really think he had time to consider that ditch?
A. No, I don't think he had time at all. His knee-jerk reaction, this is common, is to steer to the safest point in the roadway of what he at that time thought to be the — I don't think that he thought about it. He reacted to the safe position in the roadway, being the southbound lane. And that is common.
(Tr. II, 246-247.) The fact defendant could have steered to the right side of the road does not render sudden emergency inapplicable under the facts of this case.
 {¶ 38} Because defendants produced sufficient evidence on each element of sudden emergency, the trial court did not err in submitting the question to the jury. Accordingly, plaintiff's third assignment of error is overruled.
 {¶ 39} Plaintiff's fourth and fifth assignments of error are interrelated, and we therefore discuss them jointly. Plaintiff's fourth assignment of error asserts the trial court's judgment was against the manifest weight of the evidence; plaintiff's fifth assignment of error contends the trial court erred in refusing to grant plaintiff's motion for a new trial. While these assignments of error ordinarily would be analyzed separately, plaintiff raises the manifest weight of the evidence in both assignments of error. See Lykins v. Brewer, Franklin App. No. 02AP-1248, 2003-Ohio-2660, at ¶ 4.
 {¶ 40} When presented with a manifest weight argument, we presume the findings in the trial court were accurate, Id. at ¶ 5, because "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The policy underlying the presumption is that the trier of fact is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Therefore, "[i]n reviewing a judgment in a civil case that is alleged to be against the weight of the evidence, [an appellate court] will only reverse when it `is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.'" GrangeMut. Cas. Co. v. Biehl (Mar. 11, 1998), Summit App. No. 18304, quotingJacobs v. Benedict (1973), 39 Ohio App.2d 141, 144; 3 Ohio Jurisprudence 2d (1953) 817, Appellate Review, Section 819. Likewise, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 41} Here, the jury's verdict, entered as a final judgment in the trial court, was not against the manifest weight of the evidence. Without question, the jury was presented with two different versions of how the collision occurred. Plaintiff supported his version with the testimony noted, including the testimony of plaintiff's expert DuBois and the testimony of defendant and Carsey. Defendants, too, presented sufficient evidence, as noted in the discussion of the sudden emergency defense, including the testimony of their expert Noll and of Mitchell. Indeed, this record presents a nearly classic case of disputed evidence to be resolved by the trier of fact. Because the record contains "some competent, credible evidence" supporting defendants' contention that defendant was confronted with a sudden emergency, plaintiff's fourth and fifth assignments of error are overruled.
 {¶ 42} Having overruled plaintiff's five assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
KLATT and SADLER, JJ., concur.