[Cite as *Szilagyi v. Wynn*, 2012-Ohio-6132.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO


| | | |
|---|---|---|
| JAMES & MONICA SZILAGYI, AS CO-ADMINISTRATORS OF THE ESTATE OF JAMES GABRIEL SZILAGYI, JR., | : : : | **O P I N I O N** |
| | : | **CASE NO. 2012-T-0015** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | |
| WILLIAM J. WYNN, | : | |
| Defendant-Appellee. | : | |


Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2010 CV 01659.

Judgment: Affirmed.


*Thomas L. Mikulka* and *Angela J. Mikulka*, The Mikulka Law Firm, L.L.C., 134 Westchester Drive, Youngstown, OH 44515 and *Maureen A. Walsh*, 134 Manchester Drive, Youngstown, OH 44515 (For Plaintiffs-Appellants).

*John C. Pfau*, Pfau, Pfau & Marando, 3722 Starr's Centre Drive, P.O. Box 9070, Youngstown, OH 44513 (For Defendant-Appellee).


MARY JANE TRAPP, J.

{¶1} James and Monica Szilagyi, co-administrators of their only son, James, Jr.'s estate, appeal from the judgment of the Trumbull County Court of Common Pleas, entered upon a jury verdict finding that appellee, William Wynn, was not liable for the horrific motor vehicle accident that took the life of their 16-year-old son. The Szilagyis

argue that the trial court erred in failing to grant their motion for a directed verdict as to Mr. Wynn's alleged negligence per se, that the jury instructions and interrogatories were deficient, and that the "sudden emergency" defense should not have been available to Mr. Wynn under the circumstances.

{¶2} We find no error in the trial court's refusal to direct a verdict as to Mr. Wynn's negligence per se, because the evidence presented created a question of fact as to whether Mr. Wynn was negligent as a matter of law, which remained for jury determination. We also find that the defense of sudden emergency was available to Mr. Wynn, as evidence was presented that Mr. Wynn encountered an emergency situation on the road the evening of the accident, which rendered it impossible for any ordinary person to comply with certain traffic laws. It was up to the jury to determine whether the facts objectively supported such a defense. Lastly, we do not find the jury instructions and interrogatories deficient. Therefore, we affirm the decision of the Trumbull County Court of Common Pleas.

### Substantive Facts and Procedural History

{¶3} On February 26, 2006, James, Jr. was traveling westbound on S.R. 87 in Mesopotamia, Trumbull County, Ohio; the speed limit on that stretch of S.R. 87 is 55 m.p.h., and the road is a two-lane highway with eight foot paved berms on either side of the road. At the same time, William Wynn was headed eastbound on S.R. 87 in the same vicinity. Driving about 60 m.p.h., James, Jr. approached Patricia Patchen's vehicle traveling ahead of him at only about 45 m.p.h. He decided to maneuver his vehicle left of center in order to pass her, but was unable to complete the passing maneuver and re-establish himself in the westbound lane of traffic before encountering

2

Mr. Wynn. Upon encountering Mr. Wynn, James, Jr. attempted to quickly move back into the westbound lane and avoid impact. Mr. Wynn, observing an obstruction in his lane of travel, also decided to move to the westbound lane of traffic to avoid crashing into James, Jr. The two cars collided, head-on, in the middle of road. James, Jr. died at the scene of the accident, unable to be extricated from his burning vehicle. Mr. Wynn was in a coma for approximately six weeks after the accident and has no recollection of the events.

{¶4} James, Jr. was survived by his parents, James and Monica Szilagyi. On behalf of their son's estate, the Szilagyis filed a wrongful death action against Mr. Wynn premised upon a claim that Mr. Wynn was negligent per se by traveling left of center into the westbound lane, in violation of R.C. 4511.25(A). A jury trial was held in January 2012, and the verdict was returned in Mr. Wynn's favor.

{¶5} The Szilagyis timely appealed, and now bring the following assignments of error:

{¶6} "[1.] Defendant was negligent per se for violation of statute."

{¶7} "[2.] Jury interrogatories were deficient."

{¶8} "[3.] Sudden emergency not a proper defense in this case."

{¶9} To assist the reader, we will address the first assignment of error followed by the third and then the second.

**Negligence Per Se and the Center Line Violation**

{¶10} In their first assignment of error, the Szilagyis argue that the trial court erred in failing to direct a verdict that Mr. Wynn was negligent per se by traveling left of center in violation of R.C. 4511.25. They argue that because it is undisputed that Mr.

3

Wynn crossed the center line and entered the westbound lane of traffic, he was negligent per se and the jury should have been so directed. However, a review of R.C. 4511.25 provides legal exceptions which, if present, excuse a failure to comply with the requirement to remain right of the centerline and allow an individual to avoid any "legal imputation of negligence" arising from the failure. While it is true that any *unexcused* failure to drive on the right side of the road constitutes negligence per se, R.C. 4511.25 must be read as a whole, including the exceptions. Those exceptions, if claimed and supported by evidence, require a factual determination by the jury. *See Satterthwaite v. Morgan*, 141 Ohio St. 447 (1943). Therefore, we find no error in the trial court's refusal to direct a verdict as to negligence per se, opting instead to let the jury determine whether the claimed exception applied in this case.

**Standard of Review**

{¶11} "Pursuant to Civ.R. 50(A)(4), '[w]hen a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.'" *Bliss v. Chandler*, 11th Dist. No. 2006-G-2742, 2007-Ohio-6161, ¶46. "Because a motion for a directed verdict presents a question of law, an appellate court must conduct a de novo review of the trial court's judgment." (Citations omitted.) *Bliss* at ¶48.

**Directed Verdict not Appropriate**

4

**{¶12}** The Szilagyis contend that Mr. Wynn violated R.C. 4511.25(A) when he crossed the center line and entered the westbound lane of traffic, and, therefore, he was negligent per se. They asked the trial court to direct the jury on this issue and find Mr. Wynn negligent per se, but the trial court declined to so. The trial court explained:

**{¶13}** "On the issue of negligence per se, there is disputed facts on that, and I am going to deny your motion for directed verdict that there was negligence per se on the part of the Defendant. It's my opinion, based on the evidence that was presented, that the jury can determine the degree of negligence, if any, of the Defendant. In other words, I'm not telling you that there isn't negligence. * * * I am saying it's for the jury to determine whether there was negligence."

**{¶14}** Our review of the record reveals that a question of fact existed as to whether Mr. Wynn actually violated R.C. 4511.25(A), and that question was for the jury to decide. Given the existence of disputed facts, the trial court did not err in declining to grant the Szilagyis' motion for a directed verdict that Mr. Wynn was negligent as a matter of law. *See Spalding v. Waxler*, 2 Ohio St.2d 1 (1965), paragraph two of the syllabus.

**{¶15}** R.C. 4511.25(A) states that: "Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway*,* except as follows:

**{¶16}** "(1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements;

**{¶17}** "(2) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to

all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;

{¶18} "(3) When driving upon a roadway divided into three or more marked lanes for traffic under the rules applicable thereon;

{¶19} "(4) When driving upon a roadway designated and posted with signs for one-way traffic;

{¶20} "(5) When otherwise directed by a police officer or traffic control device."

{¶21} The language is quite self-explanatory. If one of those five exceptions exists, then an individual has not, in fact, violated R.C. 4511.25(A), because the circumstances excused the center line violation. The question of whether Mr. Wynn met one of those five exceptions was squarely within the jury's purview. If the jury found that Mr. Wynn went left of center without meeting one of those five exceptions, then he violated the statute, and, without a complete defense, would be deemed negligent per se. If, on the other hand, the jury found that one of those five exceptions applied to Mr. Wynn's circumstances, then he could not be found negligent per se for crossing the center line as no statutory violation occurred.

{¶22} It was argued at trial, and evidence was presented to support the argument, that exception number two, the presence of an obstruction in his lane of travel, occurred and required Mr. Wynn to cross the center line in order to avoid the hazard. The Szilagyis' accident reconstructionist, Dr. Crawford, testified that under the circumstances, Mr. Wynn had several choices in terms of reacting to the Szilagyi vehicle's presence in his lane, and the typical and most appropriate action would have been to have moved further right and away from the center line. Instead, Mr. Wynn

6

"opted to move – to slow down and move to the left, and as he is moving to the left, he's moving into an area that is already occupied by another vehicle." Mr. Crawford stated that "in my mind, that is not a viable form of evasive action but certainly it's the choice that he made." Mr. Wynn's reconstruction expert, Dr. Uhrich, on the other hand, was of the opinion that Mr. Wynn took appropriate measures when Mr. Wynn was "confronted by a distinct hazard, a vehicle bearing down on you in excess of 130, 140 feet a second."

{¶23} Whether the facts and circumstances established the presence of one of these exceptions, or convincingly presented a complete defense, was for the jury to decide, and not for the trial court to direct. Generally, "[w]here conflicting evidence is introduced as to any one of the elements necessary to constitute a violation of statute, a jury question is created." *Tomlinson v. Cincinnati*, 4 Ohio St.3d 66, 69 (1983). "It is then within the jury's province to assess credibility of the witnesses and determine whose testimony and evidence warrants belief." *Pangle v. Joyce*, 76 Ohio St.3d 389, 393 (1996). Therefore, the trial court did not err in declining to direct a verdict as to Mr. Wynn's alleged per se negligence, and assignment of error one is without merit.

### Sudden Emergency Defense

{¶24} In their third assignment of error, the Szilagyis contend that the defense of "sudden emergency" was not proper in this case because Mr. Wynn "did not legally meet the standard for sudden emergency," that is, he failed to establish that it was impossible for him to comply with the statute. The Szilagyis moved the trial court to direct a verdict on the basis that Mr. Wynn had "failed to satisfy his burden of establishing that a 'sudden emergency' had occurred so as to relieve him from his

7

negligence for violating O.R.C. 4511.25." They argue that the trial court erred as a matter of law in denying their motion.

**Standard of Review**

{¶25} Just as in assignment of error number one, we review a trial court's grant or denial of a motion for a directed verdict *de novo*. A review of the record reveals that, after construing the evidence in favor of the non-moving party, Mr. Wynn, reasonable minds could come to more than one conclusion upon the evidence submitted. Therefore, the defense of sudden emergency was properly submitted to the jury.

{¶26} "[T]he violation of a statute or ordinance with which compliance is impossible does not constitute negligence." *Francis v. Bieber*, 10 Ohio St.2d 65, 68 (1967). "In order to avoid liability for injuries resulting from his failure to comply with a safety statute regulating the operation of a motor vehicle on the public highways, a motorist must show that something over which he had no control, or an emergency not of his own making, make[s] it impossible for him to comply with the statute. A self-created emergency, one arising from his own conduct or from circumstances under his control, cannot serve as an excuse." *Mapes v. Opper*, 9 Ohio App.3d 140, 141 (11th Dist.1983), citing *Oechsle v. Hart*, 12 Ohio St.2d 29 (1967)*; Spalding, supra*. *See also Peters* v. *B. & F. Transfer Co.*, 7 Ohio St.2d 143 (1966). To establish the defense of "sudden emergency," a proponent must demonstrate, by a preponderance of the evidence, that compliance with the statute was rendered impossible by the existence of a sudden emergency, arising without his or her fault and because of circumstances over which he or she had no control, and that he or she exercised such care as a reasonably prudent person would have under the circumstances. *See, e.g., Radecki v. Lammers,*

8

15 Ohio St.2d 101 (1968); *Steffy v. Blevins*, 10th Dist. No. 02AP-1278, 2003-Ohio-6443; *Nomic v. Pettry*, 32 Ohio App.2d 152 (10th Dist.1972).

{¶27} The record reveals that substantial evidence was presented from which one could find that Mr. Wynn was confronted with an emergency situation when James, Jr. entered the eastbound lane and failed to return to the westbound lane quickly enough. Two accident reconstructionists, the investigating officer, and the eye-witness, Ms. Patchen, all testified to the conditions on the road that evening, the surrounding environment and potential hazards on either side of the road, and the movement, speed, and trajectory of the vehicles as they closed in on one another. It was absolutely within the purview of the jury to take the law of "sudden emergency," as correctly instructed by the trial court, apply that law to the facts presented, and make a determination as to whether the defense applied to the facts in evidence.

{¶28} The Szilagyis argue that Mr. Wynne was not confronted by an "actual emergency" because the "situation leading to the collision * * * was not sudden and unexpected." They further argue that Mr. Wynn "had time to reflect and was in control of how he reacted to the passing Szilagyi vehicle," and that Mr. Wynn created the emergency by deciding to drive left of center, instead of another direction, in order to avoid James, Jr. But, "the doctrine of sudden emergency does not require the person to make the most judicious choice between hazards presented; only that it be reasonable for a person in that position. Clearly, it is reasonable for a person to panic when suddenly confronted with an oncoming vehicle in the same lane of a two-lane road on a rainy night. Under those circumstances, whatever it takes to avoid a head-on collision

9

must be considered, at the very least, a reasonable choice." *Bennett v. Head*, 11th Dist. No. 90-P-2214, 1991 Ohio App. LEXIS 2218, *9 (May 10, 1991).

{¶29} "When a defendant offers evidence of facts from which it may be inferred that his violation of such legal requirement was due to the existence of a sudden emergency arising without his fault, the questions of his liability in the premises, and of the proximate cause of injury resulting from such violation, are for the jury." *Satterthwaite, supra,* at paragraph three of the syllabus. Whether Mr. Wynn's actions were reasonable under the set of circumstances presented at trial was for the jury to determine, and not for the trial court to direct. It would have been improper for the trial court to take such a determination away from the jury, given the substantial amount of evidence presented by both sides, and conflicting testimony provided during the trial. *See, e.g., Steffy, supra.* Reasonable minds could have come to more than one conclusion based on the evidence presented, therefore a directed verdict was not appropriate.

{¶30} Assignment of error three is without merit.

### Jury Instructions and Interrogatories

{¶31} In their second assignment of error, the Szilagyis argue that the instructions and interrogatories provided to the jury were deficient. Their claim may be best described as a global error, as opposed to an objection to specific language used or omitted, in that they claim the trial court failed to "properly instruct the jurors for the job required of them in this matter." The Szilagyis contend specifically that the trial court's instruction on "sudden emergency" was woefully inadequate because the trial court refused to instruct the jury that Mr. Wynn was negligent per se, and that the

10

interrogatory number one was therefore not proper either given the lack of "proper rendition of applicable law."

**Standard of Review**

**{¶32}** "An appellate court is to review a trial court's decision regarding a jury instruction to determine whether the trial court abused its discretion." *State v. Kidd*, 11th Dist. No. 2006-P-0087, 2007-Ohio-6562, ¶42, quoting *State v. Mitchell Jr.*, 11th Dist. No. 2001-L-042, 2003-Ohio-190, ¶10, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). As this court recently stated, the term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). The Second Appellate District also recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court reviews a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶67.

**Instructions and Interrogatories Proper**

11

{¶33} Both parties filed proposed jury instructions and interrogatories. The Szilagyis requested that the standard Ohio Jury Instructions ("OJI") instruction on proximate cause be given, as well as on negligence/liability (referencing OJI 17.15.2), damages, expert witnesses (referencing OJI 5.70), insurance (referencing OSBAJI: Insurance in Evidence, Rev. 3-8-07), driving on right lanes exceptions (referencing OJI-CV 411.37), driving in marked lanes (referencing OJI-CV 411.55), mortality table (referencing OJI-CV 315.43), and comparative fault (referencing OJI 403.01).

{¶34} In charging the jury, the trial court instructed the jury on negligence, and directed the jury that James, Jr. was negligent per se because of his failure to execute the pass maneuver according to statute. The trial court went on to instruct the jury as to foreseeability, sudden emergency, and comparative negligence. A global review of the jury instructions reveals that the court charged the jury to deliberate in the following sequence: (1) the jury was to determine whether Mr. Wynn was negligent, taking into consideration whether the defense of "sudden emergency" applied in order to excuse him of the legal imputation of negligence arising from any violation of R.C. 4511.25(A); (2) only if the jury found that the defense of "sudden emergency" did not apply, were they to proceed to a question of the percentage of Mr. Wynn's negligence versus that of James, Jr.

{¶35} Our review of the record reveals no abuse of discretion by the trial court in the delivery of the "sudden emergency" instruction. The interrogatory related to Mr. Wynn's negligence was therefore properly explained and supported. Pursuant to Civ.R. 49(B) and 51(A), the Szilagyis carried the burden of proposing special instructions and interrogatories, or resubmitting proposed interrogatories if the initial submissions were

rejected by the court, and objecting to instructions if dissatisfied. While the Szilagyis made a confusing and non-specific objection to the "sudden emergency" charge, they failed to submit an alternative instruction and interrogatory.

{¶36} The only objection made by the Szilagyis after the jury was charged, apart from the trial court's refusal to charge that Mr. Wynn was negligent per se, was one that appears to be of a more global nature. They argued to the trial court that "we also had an issue with the structure of the jury instructions in not basically following, asking them to find that the Defendant was not negligent because of a sudden emergency but then also having to determine a second level of negligence, did he still – that the Defendant was not negligent that he did not operate reasonably and prudently under the sudden emergency."

{¶37} In addition to their more globalized arguments, the Szilagyis contend that jury interrogatory number one, which stated "[d]o you find the Defendant Wynn was negligent," was improper without adequate instructions to the jurors on the defense of "sudden emergency." They further contend that the jury should have been instructed that Mr. Wynn was negligent per se for violating R.C. 4511.25(A). Having already addressed the issue of negligence per se, we will only address the issue of the sudden emergency defense.

{¶38} The Szilagyis argue that "[t]he jury instructions were deficient in that they did not set forth a full and complete statement of the law on the affirmative defense of sudden emergency, including the requirement that the defendant exercise reasonable care." A review of the record, however, reveals that the trial court instructed the jury quite carefully on the matter of "sudden emergency," including two instructions as to the

13

degree of care required of Mr. Wynn when confronted by a sudden emergency. In fact, the trial court's instructions mirror the sudden emergency charge found in OJI.[1]

**{¶39}** It cannot be said that the jury charge, considered as a whole, was so deficient that it rendered the trial unfair or led the jury astray from its clear task of evaluating Mr. Wynn's actions first, determining whether he was negligent or not, and then proceeding to a comparative negligence analysis only if they did indeed find him to be negligent. The jury never got to a comparative negligence analysis, as they found Mr. Wynn was not negligent, presumably because he had either established that no statutory violation occurred, or successfully presented the defense of sudden emergency. No specific interrogatory was requested to test the basis of this finding.

**{¶40}** During the trial court's jury charge conference with counsel, the Szilagyis' counsel did ask the court about having the interrogatories "actually reflect the law on sudden emergency," but no specific interrogatories were offered either orally or in writing. In denying the generalized objection to the interrogatories, the trial court explained that the standard comparative negligence interrogatories would in effect address the Szilagyis' concerns and that any additional interrogatories could confuse the jury. The full set of interrogatories submitted to the jury was not made a part of the record, and thus we cannot consider them for any error. We are "limited to the record as it existed at the time the trial court rendered its judgment." *Wiltz v. Clark Schaefer Hackett & Co.,* 10th Dist. Nos. 11AP-64 and 11AP-282, 2011-Ohio-5616, ¶13. But,

---

1. The sudden emergency instruction, CV 401.13, was modified effective May 2012. The "legal excuse" portion of the sudden defense instruction, CV 401.15, was removed from the Negligence Chapter, CV 401, and will be moved to the Automobile Chapter, CV 411. As of the date of this opinion, it has yet to appear in CV 411, so one must refer to the prior iteration.

14

from the record we do have, we cannot say that the refusal to give any additional sudden emergency interrogatories constitutes reversible error.

{¶41} Under Rule 49(B), a trial court "retains limited discretion to reject submission of the interrogatories where the request is untimely or the proposed interrogatories are ambiguous, confusing, redundant, or otherwise legally objectionable. Proper jury interrogatories must address determinative issues and must be based upon the evidence presented." *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 107 (1992). The trial court retains full discretion to determine the substance and form of the questions. *Id.* We can find no fault in the trial court's refusal to give any additional interrogatories that were not fully framed and presented to the court. To support reversal of a judgment, any error in refusing to give an interrogatory must be prejudicial. *See Smith v. Flesher*, 12 Ohio St.2d 107 (1967). We find no prejudice from this record.

{¶42} The gist of the Szilagyis' claimed error is that the jury was not instructed to find Mr. Wynn negligent as a matter of law or negligent per se because he traveled left of center in violation of a statute that defines a mandatory duty. The jury was properly charged generally as to negligence, ordinary care, all of the elements of a sudden emergency defense, and comparative negligence; further, the jury was specifically instructed that Mr. Wynn claimed that while "he did violate a statute in crossing left of center," this action did not constitute negligence because a sudden emergency excused the failure and allowed him to avoid the legal effect of the statutory violation. The jury did hear that Mr. Wynn admitted a violation of the statute – that point was made and forcefully argued by counsel.

15

{¶43} As discussed above, given the disputed facts as to whether Mr. Wynn was excused of the violation, it would not have been proper for the trial court to instruct the jury that Mr. Wynn was negligent per se. A review of the jury's answer to interrogatory number one reveals that six of the eight jurors found that Mr. Wynn was *not* negligent. We have no other answered interrogatories before us. This establishes that the jury went only so far as to evaluate Mr. Wynn's alleged violation of R.C. 4511.25(A), either finding that one of the five available exceptions existed to excuse Mr. Wynn's center line violation, or that the sudden emergency defense applied, excusing his failure to comply with the statute, and thus permitting him to avoid the legal imputation of negligence. The deliberation stopped as soon as the jury determined Mr. Wynn was not negligent, as it should have, and the verdict was rendered in his favor. The jury never reached the issue of comparative negligence, nor did it need to.

{¶44} We find no abuse of discretion by the trial court in the manner in which it instructed the jury. The trial court instructed the jury on the steps it must take to resolve the case, and even reiterated the process in response to a jury question. The record reveals the jury was not misled by the trial court's instructions, and it appears the jury understood its task and executed it faithfully and in conformity with the trial court's instructions. Assignment of error two is without merit and the judgment of the Trumbull County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

16